FILED
10/6/2020 4:35 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Maria Jackson

Case 5:20-cv-01189-FB   Document 1-1   Filed 10/06/20   Page 1 of 84

NO. _____ **2020CI19387**

| | | |
|---|---|---|
| TEXAS ORGANIZING PROJECT; MOVE TEXAS CIVIC FUND; JENNIFER K. FALCON | § § § § | IN THE DISTRICT COURT |
| *Plaintiffs* | § § | |
| v. | § § | |
| | § | OF BEXAR COUNTY, TEXAS |
| | § | |
| JACQUE CALLANEN, in her official capacity as the Bexar County Elections Administrator; JUDGE NELSON WOLFF, in his official capacity as Bexar County Judge; COMMISSIONER SERGIO RODRIGUEZ, in his official capacity as Bexar County Commissioner; COMMISSIONER JUSTIN RODRIGUEZ, in his official capacity as Bexar County Commissioner; COMMISSIONER KEVIN WOLFF, in his official capacity as Bexar County Commissioner; COMMISSIONER TOMMY CALVERT, in his official capacity as Bexar County Commissioner | § § § § § § § § § § § § § § § § § | **45th** JUDICIAL DISTRICT |
| *Defendants* | § | |

## PLAINTIFFS' ORIGINAL VERIFIED PETITION AND APPLICATION FOR TEMPORARY INJUNCTION

Plaintiffs Texas Organizing Project ("TOP"), MOVE Texas Civic Fund ("MOVE"), and Jennifer K. Falcon hereby file this Original Petition and Application for Temporary Injunction.  In support of same, Plaintiffs respectfully show the Court as follows.

## I.
## BACKGROUND

The November 3, 2020 general election is a mere 29 days away. This election is projected to set record turnout, which, coupled with an increase in the population of total registered voters, means Bexar County (occasionally, "the County") must be prepared to handle more voters than it ever has before. Complicating matters, the global COVID-19 pandemic has meant drastic changes

in how elections must be conducted – including limiting how many voters can safely congregate inside a single polling place at the same time – and has created fear in the electorate as to the potential dangers of voting in person.

Now, when it is more important than ever to facilitate voters' safe exercise of their fundamental right to vote by minimizing lines at each polling place, the Bexar County Elections Department has decided to close Election Day polling locations and operate fewer locations than it did in 2012, 2014, 2016, or 2018. These closures are not merely ill-advised for the safety and convenience of all voters, but they will also negatively impact voters of color and Spanish-language voters, violating explicit provisions of the Texas Election Code, and will contravene the legally required methodology for establishing polling places adopted by Bexar County Commissioners Court in 2019. Unfortunately, this fits a pattern of legal violations spanning years, in which Bexar County has operated hundreds of fewer polling locations than it was required to.

In addition to closing Election Day polling locations, Defendant Jacque Callanen has placed severe burdens on voter registration by illegally restricting the appointment process for volunteer deputy registrars ("VDRs"), and intends to continue her practice of failing to post the legally required notice of polling locations on the County's website. Such notices are necessary to allow voters and organizations to properly plan for Election Day.

This Petition and Application seeks declaratory relief that Bexar County will imminently violate Sections 4.003(b), 13.032(1), 13.048(c)(1), and 43.007(f) of the Texas Election Code by refusing to provide proper notice of polling places; refusing to administer the volunteer deputy registrar exam and refusing to appoint volunteer deputy registrars until applicants take and pass the exam elsewhere; and failing to operate a legally sufficient number of polling places on Election Day. It further seeks injunctive relief requiring the County to come into compliance with such

provisions and, considering the County's multi-year history of election-code violations, to confirm preparedness with this Court in a timely manner.

## II.
## DISCOVERY CONTROL PLAN

1.  Pursuant to Texas Rule of Civil Procedure 190.1, Plaintiffs intend to conduct discovery under Discovery Level 3.

## III.
## PARTIES

2.  Plaintiff Texas Organizing Project ("TOP") is a non-profit organization committed to improving the participation of eligible voters across Texas in the democratic process through voter registration, voter education, and voter participation activities. TOP has approximately 1,028 members in Bexar County, a majority of whom are registered voters, including registered voters who live in areas directly affected by Bexar County's polling place closures. Additionally, TOP has 58,989 active supporters in Bexar County who volunteer and engage in the organization's activities. TOP membership is composed predominantly of persons of color. As a result of the closures, TOP members and supporters will be forced to travel further, stand in longer lines, and be exposed to more in-person contact with election workers and other voters (which imposes a risk during the current pandemic). TOP members in Bexar County additionally engage in get-out-the-vote ("GOTV") efforts, including phone banking, text messaging, and in-person canvassing. TOP plans to attempt to engage over 300,000 voters during their 2020 GOTV efforts. This includes informing individuals in advance of their nearest polling locations and helping individuals who lack transportation overcome these barriers and make it to the polls to vote in person during early voting and Election Day. These members' efforts are made more difficult when individuals have to travel further to get to each polling location and are confused because their traditional closest

polling locations have been closed. TOP also strongly encourages individuals to become VDRs, which is hindered by Defendant Callanen's refusal to administer the VDR examination.

3.   Plaintiff MOVE Texas Civic Fund ("MOVE") is a San Antonio-based project of the Alliance for Youth Organizing, an Oregon nonprofit corporation exempt from taxation as a charitable and educational organization under section 501(c)(3) of the Internal Revenue Code of 1986 as amended. MOVE empowers underrepresented youth communities to build a better democracy through civic engagement, leadership development, and issue advocacy. Voter registration is at the core of MOVE Texas's activity. MOVE provides VDR training to individuals in Bexar County. These trainings prepare individuals to take and pass the VDR examination and become active VDRs. Many of MOVE's VDR trainings take place on local college campuses—in person prior to the COVID-19, and virtually for college communities since the pandemic. Since June, 2020, MOVE has encouraged and trained approximately 200 individuals in Bexar County to become VDRs. Many of the individuals whom MOVE trains are young and do not own personal printers or have easy access to a printer. MOVE also engages in GOTV work, which includes phone banking, text messaging, and connecting to campus communities to encourage them to vote. MOVE is hindered in its GOTV work because Bexar County does not post public notice of its Election Day locations on its website as required by law.

4.   Plaintiff Jennifer K. Falcon is a registered voter in Bexar County, Texas. Ms. Falcon has previously been an active VDR in Bexar County, and has personally registered hundreds of individuals to vote. She seeks to be recertified as a VDR but faces obstacles to doing so because Defendants will not comply with the law requiring the County to administer the VDR examination. Ms. Falcon does not have a home printer or easy access to a printer, and would need to spend time

and money to print off a copy of the required examination at her own expense in order to be recertified as a Bexar County VDR.

5.   Defendant Jacque Callanen is the Bexar County Elections Administrator and is sued in her official capacity only. The Election Administrator is the official in charge of conducting election operations in Bexar County. Among numerous other duties, she is tasked with appointing VDRs, recommending Election Day polling locations to the Commissioners Court for approval, providing lists of and training Election Day poll workers, and ensuring compliance with the requirements to post notice of the list of Election Day polling locations.  She may be served with process at 1103 S. Frio St., San Antonio, TX 78207.

6.   Defendant Judge Nelson Wolff is the Bexar County Judge and is sued in his official capacity only. The County Judge is the presiding officer of the Bexar County Commissioners Court. He may be served with process at 101 W. Nueva, 10th Floor, San Antonio, TX 78205.

7.   Defendant Commissioner Sergio Rodriguez is the Bexar County Commissioner for Precinct 1 and is sued in his official capacity only. Commissioner Rodriguez is a voting member of the Bexar County Commissioners Court, the governing body of Bexar County. He may be served with process at 101 W. Nueva, 10th Floor, San Antonio, TX 78205.

8.   Defendant Commissioner Justin Rodriguez is the Bexar County Commissioner for Precinct 2 and is sued in his official capacity only. Commissioner Rodriguez is a voting member of the Bexar County Commissioners Court, the governing body of Bexar County. He may be served with process at 101 W. Nueva, 10th Floor, San Antonio, TX 78205.

9.   Defendant Commissioner Kevin Wolff is the Bexar County Commissioner for Precinct 3 and is sued in his official capacity only. Commissioner Wolff is a voting member of the Bexar

County Commissioners Court, the governing body of Bexar County. He may be served with process at 101 W. Nueva, 10th Floor, San Antonio, TX 78205.

10. Defendant Commissioner Tommy Calvert is the Bexar County Commissioner for Precinct 4 and is sued in his official capacity only. Commissioner Calvert is a voting member of the Bexar County Commissioners Court, the governing body of Bexar County. He may be served with process at 101 W. Nueva, 10th Floor, San Antonio, TX 78205.

11. Defendants County Judge and Commissioners created the position of Bexar County Elections Administrator. Defendants County Judge and Commissioners further are responsible for setting the number of the Election Administrator's deputies and other staff; providing office space and equipment to the Elections Administrator; providing operating expenses to the Elections Administrator; designating Election Day polling locations based on recommendations provided by the Elections Administrator; appointing election-day judges and alternate judges; and adopting the legally required methodology for choosing election-day polling places. TEX ELEC. CODE §§ 31.031, 31.039, 32.002(a), 43.002, 43.007.

12. At all times relevant hereto, all Defendants were and have been acting under color of statutes, ordinances, regulations, customs and usages of the State of Texas and Bexar County, Texas.

**IV.**
**JURISDICTION AND VENUE**

13. Plaintiffs seek non-monetary declaratory and injunctive relief. This Court's jurisdiction to enter injunctive relief in this lawsuit is established by Texas Election Code Section 273.081 and Texas Civil Practice and Remedies Code Section 65.001, *et seq*. This Court's jurisdiction to enter declaratory relief is established by Texas Civil Practice and Remedies Code Section 37.001, *et seq*.

14. Bexar County is the proper venue for this lawsuit because Defendants are Bexar County residents and the actions of which Plaintiffs complain occurred and are occurring in Bexar County. *See* TEX. CIV. PRAC. & REM. CODE § 15.002. The Court further has jurisdiction over Defendants because the doctrine of governmental immunity is inapplicable to county officials sued in their official capacity for *ultra vires* actions, and Plaintiff bring *ultra vires* claims against Defendants. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154 (Tex. 2016).

## V.
## FACTS

### A.    Legal Background

#### *i. Texas Election Code Section 43.007: The Countywide Polling Place Program*

15. Texas Election Code ("TEC") Section 43.007 establishes and regulates the Countywide Polling Place Program ("CWPPP"). CWPPP allows voters in participating counties to vote at any polling place on Election Day rather than exclusively at the polling place assigned to their respective election precincts.

16. To participate in CWPPP, a county "must adopt a methodology for determining where each polling place will be located." TEX ELEC. CODE § 43.007(f). In adopting this methodology, the county is required to "solicit input from organizations or persons located within the county who represent minority voters." *Id.* § 43.007(g).

17. Further, Section 43.007(f)(1) establishes an objective minimum number of Election Day polling locations that a county must operate. It states that "[t]he total number of countywide polling places may not be less than . . . 50 percent of the number of precinct polling places that would otherwise be located in the county for that election." Thus, to figure out the minimum required number of sites, one must first figure out how many sites would otherwise be located in the county if it were not participating in the countywide program.

### ii. The Legal Baseline for Establishing the Minimum Allowable Number of Vote Centers

18. The starting point for determining how many polling places "would otherwise be located in the county" is section 43.001 of the TEC, which mandates that "[e]ach election precinct established for an election shall be served by a single polling place located within the boundary of the precinct."

19. For general elections, there is only one exception to the requirement that each precinct have its own polling place. Section 42.0051 allows that if "changes in county election precinct boundaries to give effect to a redistricting plan result in county election precincts with a number of registered voters less than [750], . . . a commissioners court for a general . . . election" may combine those smaller precincts with larger neighboring precincts in order to avoid unreasonable expenditures.

20. Thus, the commissioners court is the only entity with the authority to combine precincts, and precincts must be separately combined for each general election.

21. Precincts cannot be combined in such a way that more than 5,000 active registered voters are combined together. TEX ELEC. CODE § 42.0051(c).

22. Additionally, Section 42.0051(d) prohibits combining a location if it:

> i. results in a dilution of voting strength of a group covered by the federal Voting Rights Act (42 U.S.C. Section 1973c et seq.);
> ii. results in a dilution of representation of a group covered by the Voting Rights Act in any political or electoral process or procedure; or
> iii. results in discouraging participation by a group covered by the Voting Rights Act in any political or electoral process or procedure because of the location of a polling place or other factors.

23. The Voting Rights Act ("VRA") protects historically disenfranchised racial groups as well as certain language minority groups, including, in San Antonio, Spanish-language speakers. *See* 52 U.S.C. § 10301, 10303(f).

24. To determine the minimum number of polling locations a county can operate in the countywide polling place program, one must figure out (a) how many election precincts are in the county; (b) how many of those precincts have fewer than 750 registered voters; (c) whether the county commissioners court has combined any precincts for the general election; and (d) whether removing the polling place for any of those smaller precincts would result in discouraging a VRA-protected group from participating in an electoral process or in combining more than 5,000 active registered voters together.

### iii. Required Online Notice of Polling Locations

25. TEC Section 4.003 requires that "not later than the 21st day before Election Day, a county shall post a copy of a notice of the election given by the county . . . , which must include the location of each polling place, on the county's Internet website, if the county maintains a website."

### iv. Appointment of Volunteer Deputy Registrars

26. VDRs are individuals who have undergone specific training to help eligible Texans register to vote in Texas. Persons who are otherwise qualified voters are eligible to be appointed as VDRs. TEX ELEC. CODE § 13.031. The county voter registrar appoints VDRs. *Id.*

27. "A registrar may not refuse to appoint as a volunteer deputy registrar . . . a person eligible for appointment." TEX ELEC. CODE § 13.032.

28. A person desiring to serve as a volunteer deputy registrar can request appointment in person or by mail. TEX ELEC. CODE § 13.033(a).

29. Counties must offer Secretary of State-approved training to VDRs, and can require VDRs to take an examination. TEX ELEC. CODE §§ 13.031(e), 13.047. The Secretary of State sets training standards and requires counties to offer in-person training at least once a month, subject to one exception. *Id*; Ex. A (Texas Secretary of State, *Election Advisory No. 2018-31* (Sep. 27, 2018). If

a County is not offering regular in-person training, it must instead accept the Secretary of State's online training and "administer the required examination to a potential volunteer deputy registrar at any time during the county voter registrar's regular business hours." *Id.* § 13.048.

###### B.   Defendants' History of Election Code Violations

30. Bexar County has a long history of violating the law when it comes to operating polling places and other election administration issues.

31. As shown below, based on its own publicly available government data, Bexar County operated too few polling locations on Election Day during general elections between the years 2012 and 2018. Bexar County did not enter the countywide polling place program until 2019, meaning that in general elections prior to 2019 it had to operate a polling place for every election precinct with only the exception of combining certain precincts with a population of registered voters under 750. Even setting aside considerations of how combining precincts might impact VRA-protected groups, the County still plainly failed to operate enough locations by significant margins.

32. Bexar County records indicate that in 2012 it had 661 election precincts.[1] Those same records indicate that only 216 precincts had fewer than 750 registered voters. This means that, notwithstanding any other consideration, Bexar County had to operate at least 445 Election Day polling locations (661 minus 216). Instead, Bexar County reported to the Federal Election Assistance Commission that it operated only 302 locations,[2] falling at least 143 locations short of

---

[1]Bexar County Elections Department, *November 6, 2012 Election Totals Report* (accessed Sep. 29, 2020) https://www.bexar.org/DocumentCenter/View/7487/November-6-2012-Election-Totals-Report.
[2] U.S. Election Assistance Commission, *2012 Election Administration & Voting Survey* (accessed Sep. 29, 2020) https://www.eac.gov/research-and-data/2012-election-administration-voting-survey.

the 445 locations (and potentially more if one were to account for the effects of combining precincts on VRA-protected groups).

33. Bexar County records indicate that in 2014 it had 712 election precincts.[3] Those same records indicate only 255 precincts had fewer than 750 registered voters. This means Bexar County should have operated a minimum of 457 Election Day polling locations. Instead, Bexar County reported to the Federal Election Assistance Commission that it operated only 306 locations,[4] falling at least 151 locations short of the 457 locations.

34. Bexar County records indicate that in 2016 it had 712 election precincts.[5] Those same records indicate only 244 precincts had fewer than 750 registered voters. This means that Bexar County should have operated a minimum of 468 Election Day polling locations. Instead, Bexar County reported to the Federal Election Assistance Commission that it operated 303 Election Day locations,[6] falling at least 165 locations short of the 468 locations.

35. Bexar County records indicate that in 2018 it had 726 election precincts.[7] Those same records indicate only 228 precincts had fewer than 750 registered voters.[8] This means that Bexar

---

[3] Bexar County Elections Department, November 4, 2014 Election Totals Report (accessed Sep. 29, 2020) https://www.bexar.org/DocumentCenter/View/7456/November-4-2014-Election-Totals-Report.

[4] U.S. Election Assistance Commission, *2014 Election Administration & Voting Survey* (accessed Sep. 29, 2020) https://www.eac.gov/research-and-data/2014-election-administration-voting-survey.

[5] Bexar County Elections Department, *November 8, 2016 Election Totals Report* (accessed Sep. 29, 2020) https://www.bexar.org/DocumentCenter/View/9441/November-8-2016-Election-Totals-Report.

[6] U.S. Election Assistance Commission, *2016 Election Administration & Voting Survey* (accessed Sep. 29, 2020) https://www.eac.gov/research-and-data/2016-election-administration-voting-survey.

[7] Bexar County Elections Department, *November 6, 2018 Election Totals Report* (accessed Sep. 29, 2020)  https://www.bexar.org/DocumentCenter/View/19193/November-6-2018-Election-Totals.

[8] *Id.*

County should have operated 498 locations. Instead, Bexar County operated only 302 locations,[9] falling at least 196 locations short of the 498 locations.

36. Further, in 2016, Bexar County was successfully sued by Southwest Voter Registration Education Project, represented by the Mexican American Legal Defense and Education Fund, for imposing illegal and overly restrictive guidelines on identification requirements for voting in person despite federal court rulings overturning such requirements.[10]

37. In the March 3, 2020 primary, Bexar County violated TEC Section 41.031 by failing to open multiple locations on time and thus failing to operate all locations for the requisite 12 hours of voting.[11]

38. In the July 14, 2020 primary runoff election, Bexar County violated Section 4.003 of the Election Code by failing to post an election notice on its website that "include[d] the location of each polling place" 21 days prior to Election Day. The notice that it did post merely directed the public to check back on July 12 – a mere two days before the election. *See* Ex. C (Notice of July 14, 2020 primary runoff election). This Notice was both practically and legally deficient.

39. During the July 14, 2020 runoff election, Bexar County failed to operate 12 Election Day polling locations because it had not recruited enough backup poll workers to compensate for those who dropped out due to concerns over COVID-19 – despite having been warned of this possibility

---

[9] *See* Ex. B, Bexar County 2018 List of Election Day Locations (downloaded from Bexar County Elections Website on Oct. 24, 2018).
[10] Temporary Restraining Order, *Southwest Voter Registration Education Project v. Callanen*, No. 2016-Cl-18915 (Oct. 28, 2016) https://www.maldef.org/wp-content/uploads/2018/08/Proposed_TRO_FINAL_Signed.pdf.
[11] Sanford Nowlin, *Despite Glitches at Some Polling Places, 42,000 Bexar Residents Have Cast Ballots So Far*, SACurrent.com (accessed Sep. 29,2020) https://www.sacurrent.com/the-daily/archives/2020/03/03/despite-glitches-at-some-polling-places-42000-bexar-residents-have-cast-ballots-so-far.

ahead of time.[12] Bexar County announced 3 of these closures a mere 24 hours before the election,[13] violating the requirement to provide notice of changes no later than 72 hours before Election Day. TEX. ELEC. CODE § 43.061(b).  Further, because the County never posted proper notice of the locations in the first place, it was also not able to comply with the requirements for posting notice of changes for the other 9 originally planned locations.

### C.    Defendant Callanen's Refusal To Appoint VDRs or Administer VDR Examinations

40. On or about September 23, 2020, the Bexar County Elections Department placed a sign in a conspicuous location in its office stating that it would not appoint any VDRs for the remainder of the year 2020. Ex. D (Picture of Bexar County Elections Sign). This sign was discovered by a MOVE-trained VDR applicant who went to the county elections department after having been trained by MOVE in order to take the VDR examination and become a VDR. This eligible VDR applicant was refused appointment by the Bexar County Elections Department.

41. On September 24, 2020, Plaintiff MOVE informed Defendants that their policy violated the Texas Election Code.

42. Later that same day, the Bexar County Elections Department removed the sign and replaced it with a new sign saying it will only appoint registrars who bring with them a printed and completed copy of the online VDR examination which the Texas Secretary of State makes available. Ex. E (Picture of Replacement Bexar County Elections Sign).

43. MOVE has had to modify its training to instruct individuals that they must print off a copy

---

[12] *See Testimony of Joaquin Gonzalez* at Agenda Item 39, minute 7:30 (Jun. 16, 2020), available at https://bexarcountytx.swagit.com/play/06162020-596.
[13] Jakob Rodriguez, *Three Bexar County Voting Centers Close Prior to July 14 Primary Runoff Election*, KSAT.com (Jul. 13, 2020) https://www.ksat.com/news/local/2020/07/14/three-bexar-county-voting-centers-close-prior-to-july-14-primary-runoff-election.

of the Secretary of State's online examination at their own expense.

44. Individuals, in particular students, at MOVE VDR trainings have asked whether MOVE or another entity can mail them a copy of the VDR examination because they do not have access to a printer.

45. MOVE employees have spoken with VDR applicants who would have shown up at the Bexar County Elections Department unaware of the requirement to bring their own copy of the online examination. These individuals would have been refused appointment and been forced to drive home, print a copy of the examination, and come back to the county office in order to exercise their legal right to be appointed as VDRs.

46. On October 1, 2020, Plaintiff Falcon called Bexar County Elections and inquired how she could be appointed as a VDR. The Bexar County Elections employee she spoke with told her that she needed to print out and complete her own copy of the online VDR examination provided by the Secretary of State and bring it with her into the office. Plaintiff Falcon informed the employee that she did not have a printer and could not print off the examination to bring in. The employee informed her that this was the only option and that they would not administer the examination in person or even provide a copy of the examination.

### D.      D. Defendants' Adoption of Countywide Polling Place Program in 2019

47. As described below, in 2019, prior to the November Constitutional Amendments Election, Bexar County decided to enroll in the CWPPP.

48. Public commentary during the transition to the CWPPP expressed major concerns about the Election Department's proposal to close polling locations as part of the move to countywide polling. *See, e.g.*, Ex. F (County Commissioner Justin Rodriguez, *Press Release* (Jul. 25, 2018)).

49. As a result of this input, the County Commissioners expressed support for moving to a

countywide model only if the number of polling locations would be maintained. *See id.*

50. The Bexar County Commissioners Court held a legally required public hearing on August 6, 2019 in order to enter CWPPP. Ex. G (Bexar County Commissioners Agenda for August 6, 2019).

51. The agenda item for authorizing the program was coupled with an item to procure additional voting equipment to maintain the number of Election Day locations. *Id*.

52. A diverse and bipartisan group of individuals testified at the hearing expressing overall support of the program but only if the County committed to not shuttering polling locations. Testimony and written statements to this effect were provided by a diverse array of organizations, including the Mexican American Legal Defense and Education Fund, the League of Women Voters of San Antonio, Texas Organizing Project, San Antonio NAACP, MOVE Texas, and the Bexar County Republican Party.[14]

53. As a result of this overwhelming demand to maintain the number of polling locations, Commissioners Court appropriated money for purchasing additional voting equipment.

### E.    Defendants' Election Day Plans for the November 3, 2020 General Election

54. On August 14, 2020 Defendant Callanen introduced a proposed list to the Commissioners Court that contained 273 Election Day polling locations for the 2020 General Election – 29 locations short of what it operated in 2018. The Commissioners Court did not take action on that list.

55. On that same day, the Commissioners Court unanimously passed the S.M.A.R.T. Elections initiative, which included a resolution by the Commissioners Court "to mitigate the threat to public

---

[14] *Testimony in Front of Bexar County Commissioners Court* at Agenda Item 2, minutes 13:45-36:20 (Aug. 6, 2019) available at https://bexarcountytx.swagit.com/play/08062019-2102.

health, maximize voter access, and support citizens in exercising their democratic right in a safe manner during the COVID 19 pandemic." Ex. H (S.M.A.R.T. Elections Resolution). It acknowledged that "Bexar County Elections has received $1,740,599 in federal funds appropriated from the Help America Vote Act and $4,400,000 in federal Coronavirus Relief Funds appropriated by Commissioners Court to support the administration of elections during the global pandemic," and resolved to not "consolidat[e] or remov[e] other Early Voting or Election Day locations." *Id.* The Commissioners Court further expressed that they would support Defendant Callanen with whatever resources are necessary to expand access and successfully administer the 2020 General Election.[15]

56. Bexar County was additionally awarded a $1.9 million grant for election support from the Center for Tech and Civic Life.[16]

57. On September 10, 2020, the Texas Civil Rights Project sent a letter to Defendants informing them that they were at risk of violating the Election Code based on the proposed number of Election Day polling locations, and pointing out Defendant Callanen's failure to comply with the TEC's notice requirements during the July 14, 2020 election. *See* Ex. I (Sep. 10 Letter from Texas Civil Rights Project).

58. On September 15, 2020, Defendant Callanen appeared before Commissioners Court seeking approval for a list that contained 282 Election Day polling locations – 20 locations short of what it operated in 2018.

---

[15] *See*, Scott Huddleston, *Bexar Elections Chief Gets Virtual Blank Check To Expand Access, Ensure Voting Safety in November Elections*, ExpressNews.com (Aug. 14, 2020) https://www.expressnews.com/news/local/article/Bexar-County-considers-numerous-ways-to-increase-15484744.php.

[16] Sanford Nowlin, *Bexar County Wins $1.9 Million Grant to Help with Safe November Election*, SACurrent.com (Sep. 29, 2020) https://www.sacurrent.com/the-daily/archives/2020/09/29/bexar-county-wins-19-million-grant-to-help-with-safe-november-election.

59. Commissioner Justin Rodriguez questioned Defendant Callanen over the proposed list of locations, asking whether action on the list was necessary on that day or could be postponed for further consideration. Defendant Callanen misrepresented to the Commissioners Court that there was a requirement in the Texas Administrative Code to provide a list of early voting and Election Day locations by the close of business day on September 15.[17] No such requirement, or any similar requirement, exists in statute or the Administrative Code.

60. On September 15, 2020, the Commissioners Court approved Defendant Callanen's list subject to the addition of three locations corresponding to three additional early voting locations that were approved. The list was attached as an exhibit to an amended Order for the election. There was no agenda item or order explicitly combining precincts that contain under 750 registered voters with other precincts.

61. On September 18, 2020, Defendant Callanen responded to the Texas Civil Rights Project indicating that she would continue to not comply with the TEC's notice requirements or increase the number of Election Day polling locations. *See* Ex. J (Sep. 18 Response from Def. Callanen to Texas Civil Rights Project). The letter further stated that the County would be operating 284 Election Day locations. The letter also stated that on September 18, 2020, Bexar County had 734 election precincts, 510 of which contained 750 or more registered voters.

62. Defendant Callanen confirmed that she was basing her calculation for the TEC's minimum requirements for election-day locations on the County's theoretical ability to combine every precinct containing fewer than 750 registered voters without regard to the impact of combining those precincts on VRA-protected groups and without having to actually combine those precincts

---

[17] *Testimony in Front of Bexar County Commissioners Court* at Agenda Item 57, 24:26-25:15 (Sep. 15, 2020) available at https://bexarcountytx.swagit.com/play/09152020-753.

by Order of Commissioners Court or follow the other legal requirements for combining precincts, such as not combining precincts in such a way as to have over 5,000 active registered voters combined together.

### F.    Effect of Proposed Polling Place on Groups Protected by the Voting Rights Act

63. Studies indicate that voter turnout is negatively impacted by increasing the time and distance it takes to get to a polling place. *See* The Voting Rights Lab, *Polling Place Consolidation: Negative Impacts on Turnout and Equity* (Jul. 2020) ("Changing polling locations can lower turnout due to both transportation costs – distance, time, and the cost of finding and using transportation to polling places, and search costs – the cost of learning about and finding new polling locations.") (*citing* Jennifer Wolak, *Feelings of Political Efficacy in the Fifty States*, Political Behavior 40, no. 3 (2018): 763-784).

*64.* Two studies from North Carolina estimated that polling place changes reduced turnout between 0.7 and 2 percentage points. Jesse Yoder, *How Polling Place Changes Reduce Turnout: Evidence from Administrative Data in North Carolina*." Working Paper, accessed on July 9, 2020, available   at   https://www.dropbox.com/s/pk219n6bam4584d/pollingplaces.pdf?dl=1;   Joshua D.Clinton *et al.*, *Polling Place Changes and Political Participation: Evidence from North Carolina Presidential Elections, 2008-2016* (2019).

65. Studies indicate that, in particular, voters of color are sensitive to increased distances. This is unsurprising, as these populations in Texas continue to experience negative disparities across a wide range of socio-economic measures. *See, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 261 (5th Cir. 2016) ("the record contains evidence that minority voters generally turn out in lower numbers than non-minority voters and that State-sponsored discrimination created socioeconomic disparities, which hinder minority voters' general participation in the political process.").

66. A 2014 Florida study estimated that closures on Election Day reduced turnout among African American and Latinx voters by 3 and 7 percentage points respectively. Brian Amos, Daniel A. Smith, & Casey Ste. Claire, *Reprecincting and Voting Behavior*, 1 Political Behavior 39 133–56 (Mar. 2017).

67. A 2011 analysis of Los Angeles County's reduction of polling places found that for each tenth of a mile added in distance to vote, turnout declined by 0.5 percentage points. Henry E Brady & John E. McNulty, *Turning Out to Vote: The Costs of Finding and Getting to the Polling Place*, 1 The American Political Science Review 105, 115–34 (2011).

68. A 2020 study found that during the 2012 Presidential general election, each additional quarter mile to the polls reduced turnout rates by approximately 2 to 5 percentage points. Enrico Cantoni, *A precinct too far: Turnout and voting costs*, 12(1) American Economic Journal: Applied Economics 61 (2020).

69. There is also reason to believe that Bexar County's historic violation of the election code as detailed in Paragraphs 31-35 *supra* has discouraged tens of thousands of voters over recent elections: Between 2014 and 2018, Dallas and Harris Counties operated hundreds of more Election Day locations than Bexar. Each offered roughly twice as many locations per registered voter and per square mile as Bexar County. Comparison of Election Day turnout in the 2014, 2016, and 2018 general elections reveals that, on average, 3.87% more of Dallas County's registered voters turned out on Election Days than Bexar County's. Comparison of Election Day turnout in the 2014, 2016, and 2018 general elections reveals that, on average, 3.43% more of Harris County's registered voters turned out on Election Days than Bexar County's. 3% of Bexar County's registered voters would equate to 34,385 additional election-day votes.

70. Bexar County's plans to reduce polling locations is premised on its ability to combine each and every precinct that contains fewer than 750 registered voters. The County has not analyzed at all what impact these combinations would have on VRA-protected groups. It therefore has not established that it would in fact theoretically be able to combine all of these precincts.

71. Using models based on Census data, 120 of the precincts with fewer than 750 registered voters have majority-minority populations.

72. An analysis of data from the 2018 general election demonstrates that combining polling locations demonstrably increased the burden on voters of color and Spanish-language voters, in particular on those voters who live in precincts with fewer than 750 registered voters. Ex. K (Bexar County Distances to Polling Place Analysis). Analysis indicates that African American voters in precincts with fewer than 750 registered voters had to travel 25.54% further to get to a polling location than the average voter in the county. *Id.* The same analysis indicates that Hispanic voters in precincts with fewer than 750 registered voters had to travel 26.12% further to get to a polling location than the average voter in the county. *Id.*

73. Analysis of voter data from 2020 also demonstrates that the additional closure of polling locations in 2020 will negatively impact African American and Hispanic voters. *Id.* It indicates that the average African American voter in a precinct with less than 750 registered voters will have to travel 40.98% further than the average voter in 2018 did, and 23.73% further than the average voter in 2020. *Id.* The average Hispanic voter in a precinct with less than 750 registered voters will have to travel 38.51% further than the average voter in 2018 did, and 21.55% further than the average voter in 2020. *Id.*

74. During its GOTV efforts, MOVE has encountered individuals who have expressed that they are unlikely to go vote because they cannot make it to a polling place due to lack of transportation. MOVE works primarily with populations that are majority persons of color.

75. TOP's membership is majority persons of color, and they are harmed by increased travel distances to the polls and longer lines at the polls due to consolidated locations. TOP members help individuals who lack transportation get to the polls in order to vote. These efforts are made more difficult when polling places are closed or are made more distant from the voters. Closure of historic polling places also increases information costs for voters and TOP members seeking to vote on Election Day.

76. Taken altogether, the data indicates that combining precincts with majority VRA-protected populations will discourage those groups' participation in the general election.

**G.    Defendant Callanen's Refusal To Comply with Legal Notice Requirements.**

77. Defendant Callanen has stated in writing that she does not intend to post a list of Election Day polling locations on the County's website until after the early voting period has ended, rather than by the legally required October 13 deadline. Ex. J (Sep. 18 Response from Def. Callanen to Texas Civil Rights Project).

78. Defendant Callanen's refusal to comply with state notice laws hinders Plaintiff MOVE's GOTV efforts and injures its employees and volunteers by forcing them to divert their resources to compensate for the lack of a publicly available final list of locations. MOVE manually compiles lists of county early voting and election-day polling locations, including Bexar County, in order to be able to tell voters their nearest location and help those voters make a plan for voting. Because Bexar County does not provide a list of election-day locations online, MOVE is unable to provide information on these locations to voters until right before Election Day. When individuals ask

about their nearest Election Day location, MOVE employees and volunteers are forced to tell them that they will have to call them back with the information. MOVE may not be successful in reaching the individuals again to give them the requested information.

79. Plaintiff TOP operates a phone banking, text messaging, and canvassing campaign that relies on access to the list of polling locations throughout the County during early voting and Election Day, communicating with hundreds of thousands of voters. In order to encourage people to vote, TOP works to ease the process as much as possible—one method is by informing voters of their nearest polling location. However, if TOP does not have a final list of polling locations to refer to, they are unable to help voters find the polling location most convenient and accessible to them. TOP members who themselves seek to vote on Election Day are also injured by Defendants' failure to post Election Day locations online.

## VI.
## CAUSES OF ACTION

### A.    Defendants' Actions Violate Section 13.032 of the Texas Election Code

80. Defendant's brazen refusal to comply with their duty to provide examinations to VDRs is in direct violation of the VDR examination provisions of the TEC. Section 13.048(a) allows counties to "adopt a method of appointment for volunteer deputy registrars prescribed by the secretary of state." Once the county adopts the Secretary of State's prescribed method, *it must*, under Section 13.048(c)(1), "administer the [Secretary of State's] required examination to a potential volunteer deputy registrar at any time during the county voter registrar's regular business hours." By adopting the Secretary of State's prescribed method of appointment, Bexar County is required to administer examinations for VDRs. Bexar County's refusal to do so is a clear violation of the TEC.

81. Bexar County's refusal to administer these examinations for prospective VDRs, without

notice to VDRs who presume the County is following state law, also violates the VDR appointment

provisions of the TEC. The TEC states that "[a] registrar may not refuse to appoint as a volunteer

deputy registrar . . . a person eligible for appointment under Section 13.031(d)." TEX. ELEC. CODE

§ 13.032(1). Section 13.031(d) of the TEC lists the following eligibility requirements for VDRs:

1. be 18 years of age or older;
2. not have been finally convicted of a felony or, if so convicted, must have:
   i. fully discharged the person's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or
   ii. pardoned or otherwise released from the resulting disability to vote;
3. meet the requirements to be a qualified voter under Section 11.002 except that the person is not required to be a registered voter; and
4. not have been finally convicted of an offense under Section 32.51, Penal Code.

82. As shown in the verified facts in this Petition, Plaintiffs TOP and MOVE currently have

and consistently will secure volunteers and fellows who are eligible to become VDRs under

Section 13.031(d) to register voters. As shown in the verified facts, Plaintiff Falcon and the

volunteers and fellows of Plaintiffs TOP and MOVE, who wish to volunteer their time and energy

to the noble cause of registering voters in their respective communities and who are also eligible

to become VDRs under Section 13.031(d), are additionally being denied their right to be appointed

as a VDR under Section 13.032(1) by being refused an examination pursuant to Section

13.048(c)(1) of the TEC and turned away until they take the examination elsewhere. As a result,

because all Plaintiffs continue to suffer harm from Defendants' violation of Sections 13.032(1)

and 13.048(c)(1) and are in danger of continued harm due to Defendants' threats to violate Section

13.032(1) and 13.048(c)(1), Plaintiffs are "entitled to appropriate injunctive relief to prevent the

violation from continuing or occurring" pursuant to Section 273.081 of the Texas Election Code.

### B.     Defendants' Actions Violate Section 43.007(f)(1) of the Texas Election Code

**Because They Are Premised on Combining Every Precinct with Under 750 Registered Voters Despite the Commissioners Court Having Not Legally Combined Those Precincts**

83. The plain language of the TEC makes clear that only the Commissioners Court can combine precincts, and that it must actually combine those precincts for each individual election. TEX. ELEC. CODE § 42.0051. The Bexar County Commissioners Court has not ordered the combination of precincts for the 2020 General Election. Insofar as it approved a list of Election Day locations proposed by Defendant Callanen, this did not constitute a lawful combination of precincts because, *inter alia*, it combined more than 5,000 registered voters together in contravention of TEC 42.0051(c). Defendant Callanen has made it clear that she does not believe that it is necessary for the Commissioners Court to formally combine precincts, and that any theoretical combinations do not need to adhere to the other legal requirements for combining precincts – for example, that the precincts cannot be combined if the total population being combined totals more than 5,000 active registered voters. *See* Ex. J (Sep. 18 Response from Def. Callanen to Texas Civil Rights Project).

**C.      Defendants' Actions Violate Section 43.007(f)(1) of the Texas Election Code Because They Are Premised on a Theoretical Ability To Combine Precincts in a Way That Discourages Participation by VRA-protected Groups**

84. Defendant Callanen's proposed 284 election-day locations is premised on being able to combine every precinct that contains fewer than 750 registered voters. However, combining all of these precincts demonstrably has discouraged and will continue to discourage VRA-protected groups from participating in the election on Election Day. This contravenes the plain language of TEC Section 42.0051, which states that an election precinct cannot be combined if it "results in discouraging participation by a group covered by the Voting Rights Act in any political or electoral process or procedure because of the location of a polling place or other factors."

24

**85.** Defendant Callanen has previously failed to post the list of Election Day polling locations on the County's website until two days before Election Day and has indicated in writing that she intends to continue this practice. This violates the plain language of Section 4.003 of the TEC, which states: "not later than the 21st day before Election Day, a county shall post a copy of a notice of the election given by the county . . . , which must include the location of each polling place, on the county's Internet website, if the county maintains a website."

## VIII. APPLICATION FOR TEMPORARY INJUNCTION

Plaintiffs re-allege and incorporate by reference the allegations contained in all of the preceding paragraphs and for the reasons discussed below are entitled to injunctive relief both under TEC section 273.081 and at common law.

### A.   Plaintiffs Are Entitled to Injunctive Relief Because They Have Shown a Violation of a Statute That Authorizes Injunctive Relief.

Plaintiffs seek relief pursuant to TEC section 273.081 because they are "being harmed or [are] in danger of being harmed by a violation or threatened violation of [the Election Code]." Tex. Elec. Code § 273.081. The same provision authorizes "appropriate injunctive relief to prevent [those] violation[s of the Election Code] from continuing or occurring." *Id.* As numerous courts addressing section 237.081 have held, this "express language supersedes the common law injunctive relief elements such as imminent harm or irreparable injury and lack of an adequate remedy at law." *E.g., Cook v. Tom Brown Ministries*, 385 S.W.3d 592, 599 (Tex. App.—El Paso 2012, pet. denied); *Hughs v. Dikeman*, --- S.W.3d ---, 2020 WL 5361658, at *13 (Tex. App.—Houston [14th Dist.] Sept. 8, 2020, no pet. h.) (applicant for injunctive relief pursuant to Election Code § 273.081 "need not prove these common law elements."). Plaintiffs are therefore entitled to injunctive relief because they have "shown a violation of a statute that authorizes injunctive relief." *Id.* (quoting *8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858, 861 (Tex. App.—Houston

[14th Dist.] 2010, no pet.)).

**B.      Plaintiffs Are Additionally Entitled to Injunctive Relief at Common Law.**

Even in the absence of an express statutory authorization, Plaintiffs would be entitled to injunctive relief. At common law, "a temporary injunction should only issue if the applicant establishes (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim if the injunction is not granted." *Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 273 (Tex. App.—San Antonio 2012, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). Further, "[b]ecause an injunction is an equitable remedy" the court should "weigh[] the respective conveniences and hardships of the parties and balance[] the equities," which "involves weighing the public interest against the injury to the parties from the grant or denial of injunctive relief." *Int'l Paper Co. v. Harris Cty.*, 445 S.W.3d 379, 395 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Plaintiffs satisfy each of the three elements for temporary injunctive relief at common law and a balancing of the equities weighs in favor of that relief.

   *i.      Plaintiffs have established their causes of action.*

Plaintiffs have established their causes of action under TEC section 273.081 for all the reasons set out earlier in this petition. *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 17 (Tex. 2011) (Election Code § 237.081 sets out a private cause of action); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (element satisfied where applicant had pled a cause of action).

   *ii.     Plaintiffs have established a probable right to the relief sought.*

"Probable right to relief" is a term of art in the injunction context." *Regal Entm't Group v. iPic-Gold Class Entm't, LLC*, 507 S.W.3d 337, 345–46 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citations omitted). An applicant satisfies this element when they "plead a cause of action and

present some evidence that tends to sustain it, meaning that the evidence must be sufficient to raise a bona fide issue as to [their] right to ultimate relief." *Id.* (cleaned up); *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990) (an applicant "need not establish the correctness of his claim to obtain temporary relief, but must show only a likelihood of success on the merits.").

Plaintiffs have provided evidence sufficient to demonstrate a probable right to relief as to (1) their notice claim; (2) their VDR exam claim; and (3) their polling closure claims, all of which are predicated on Defendant Callanen's intended violation of straightforward and unambiguous TEC provisions.

First, Plaintiffs have provided evidence that even after being put on notice, Defendant Callanen has expressed that before the November 2020 election she intends to willfully violate the straightforward provisions of the TEC governing when a county must post notice of the polling places it intends to use. *See* TEX. ELEC. CODE 4.003; ¶¶ 38, 77 *supra*. Plaintiffs therefore have a probable right to relief on their notice claim.

Second, Plaintiffs have provided evidence that Bexar County has adopted "a method of appointment" for VDRs prescribed by the Texas Secretary of State and is therefore unambiguously required by the TEC to administer the VDR exam to potential VDRs. TEX. ELEC. CODE § 13.048. And again, despite being put on notice, Defendant Callanen intends to willfully violate this straightforward provision of TEC by refusing to administer the VDR exam and requiring that potential VDRs complete it elsewhere. ¶¶ 40-46 *supra*. Plaintiffs therefore have a probable right to relief on their VDR exam claim.

Third and finally, Plaintiffs have provided evidence that Bexar County has premised its list of locations on a theoretical ability to combine every precinct that has fewer than 750 registered voters with other larger precincts. It has taken this latter step despite evidence that doing so

discourages participation by VRA-protected groups, ¶¶ 63-73 *supra*, and despite the fact that only the Bexar County Commissioners Court has the authority to combine precincts. The Commissioners Court has not ordered these combinations, and has certainly not ordered them in a way that only combines fewer than 5,000 active registered voters together. These violations are consistent with Bexar County's failure to operate the legally required number of Election Day polling locations over numerous election cycles, which has already burdened countless past voters. Because this evidence "tends to sustain" Plaintiffs' polling closure claims, which are based on objectively ascertainable criteria and unambiguous provisions of the TEC, Plaintiffs have established a probable right to relief on those claims.

> **iii.    Plaintiffs have established a probable, imminent, and irreparable injury in the interim if an injunction is not granted.**

Bexar County has made its intent to violate the TEC clear. Its failure to post a list of polling places and to provide the required number of polling places in compliance with the TEC will injure Plaintiffs by burdening Plaintiff Falcon's and Plaintiff TOP's and MOVE's ("Organizational Plaintiffs") members' constitutional and statutory rights, and by frustrating Organizational Plaintiffs' missions to get out the vote by making it more difficult for them to provide accurate information to the communities they serve. The delay or denial of the appointment of VDRs similarly burdens those Plaintiff Falcon's and Organizational Plaintiffs' members' right to associate for political purposes, and will also injure Plaintiff MOVE by making it more difficult for its employees and volunteers to become VDRs, thus dampening its efforts to get out the vote by registering as many new voters as possible.  These injuries are both imminent and probable absent remedial relief because the November 2020 election is fast approaching and because Bexar County has made it clear it will not comply with the TEC of its own volition.

These injuries are also irreparable. "An injury is irreparable if the injured party cannot be

adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. Only injunctive and declaratory relief are available to Plaintiffs at law, therefore, their injuries are necessarily non-compensable.

Infringements on constitutional rights, such as the right to vote and the right to associate, are quintessentially non-compensable. *See, e.g., Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). This is true even if the burden makes it harder to vote but does not ultimately cause disenfranchisement. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (issuing preliminary injunction against reduction in early voting days for certain voters); s*ee also League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury" and upholding preliminary injunction of several state law practices); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (issuing preliminary injunction against rejecting student voter registration forms, even though most could presumably register at their parents' home address).

Similarly, Organizational Plaintiffs' injuries are irreparable. Organizational Plaintiffs are non-profit entities with voter education and engagement efforts that specifically include educating voters about where they can vote and encouraging them to do so. There is no way to compensate Organizational Plaintiffs for the frustration of their mission posed by the additional time they must spend working to encourage voters who have lost their familiar polling places to shoulder the extra effort to vote, or for them and others to seek appointment as VDRs. *Cf. SBI Investments, LLC v. Quantum Materials Corp.*, 2018 WL 1191854, at *6 (Tex. App.—Austin Mar. 8, 2018) (quoting *Occidental Chem. Corp. v. ETC NGL Transp., LLC*, 425 S.W.3d 354, 364 (Tex. App.–Houston

[1st Dist.] 2011, pet. dism'd) ("Texas courts have recognized that 'business disruptions' may result in irreparable harm for which a temporary injunction is appropriate."); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (where challenged electoral practices "unquestionably" made it "more difficult" for plaintiff organizations "to accomplish their primary mission of registering voters" they had been injured "for purposes both of standing and irreparable harm").

Members of Plaintiff TOP will never be able to be compensated for the additional burden they bear from having to travel further to vote on Election Day, or the additional time that they must spend persuading voters to vote at more distant locations, helping them travel to more distant locations, and remedying the confusion caused by closed neighborhood polling locations.

### iv.    A balancing of the equities favors Plaintiffs.

As discussed above, Plaintiffs' imminent injuries are severe. Weighed against this are the negligible costs to Bexar County should injunctive relief be granted: the cost to post a timely notice of election; the cost to administer a short VDR examination during normal business hours; and the cost to operate an additional approximately 27 polling locations for which the Bexar County Commissioners Court has already made available funding to operate.

Additionally, it cannot be overstated that these costs *are required by Texas law*. Injunctive relief, even if it imposes such minor costs, is therefore in the public interest because "[i]t is beyond dispute that [an] injunction serves the public interest [when] it forces the correct and constitutional application of Texas's duly-enacted election laws." *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 595 (5th Cir. 2006). Moreover, it is universally agreed that the public has a "strong interest in exercising the fundamental political right to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Thus, "by definition, the public interest favors permitting as many qualified voters to vote as

possible." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247–48 (4th Cir. 2014) (cleaned up); *accord Jones v. Governor of Florida*, 950 F.3d 795, 831 (11th Cir. 2020); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012). Finally, Bexar County Commissioners Court has already made available sufficient funds to operate the additional locations. ¶¶ 51-53, 55 *supra*. For these reasons, permitting continued violations of the TEC that also burden the right to vote is sharply contrary to the public interest.

### C.      Requested Relief

For all the foregoing reasons, Plaintiffs request that this Court grant their Application for a Temporary Injunction and preliminarily order Defendants and their agents, servants, employees and all persons acting under, and in concert with, or for them to:

- Appoint any eligible VDR applicant who requests appointment either in person or by mail pursuant to Texas Election Code Sections 13.032 and 13.033(a).

- Provide a copy of the VDR Examination to any eligible applicant who appears in person having completed the Secretary of State's online training.

- Post a notice of the election that includes a complete list of election-day polling locations to the Bexar County Election Departments' website no later than October 13, 2020. If not all of the additional locations ordered herein have been finalized by this date, include language indicating that additional locations will be added no later than October 20, 2020.

- Operate a minimum of 311 Election Day polling locations on November 3, 2020 from 7 a.m. to 7 p.m.

- Certify to this Court by October 20, 2020 that it has found the additional locations and identify those locations to this Court.

- Certify to this Court beginning on October 20, 2020, and continuing on a weekly basis thereafter, how many poll workers have been trained and are available to work on Election Day.

- Certify by October 20, 2020 that it has sufficient voting equipment to operate the previously identified list of locations, and that no polling place will be supplied with fewer than 5 voting machines.

Plaintiffs are ready, willing, and able to post an appropriate bond.

## IV.
## PRAYER

THEREFORE, Plaintiffs respectfully pray for the following permanent relief in addition to the foregoing preliminary relief:

- Declaratory relief stating that the County's plans to operate fewer than 302 Election Day polling locations will violate Texas Election Code Section 43.007.

- Declaratory relief that the County is violating Section 13.032 of the Election Code by failing to appoint any eligible volunteer deputy registrar who seeks appointment in person or by mail.

- Declaratory relief that the County is violating Section 13.048(c) of the Texas Election Code by failing to administer the volunteer deputy registrar examination to applicants who complete online training.

■ Declaratory relief that the County is violating Section 4.003 of the Texas Election Code by failing to post a notice containing each polling place on the County website twenty-one days before Election Day.

■ Injunctive relief ordering Defendant Callanen to appoint any eligible applicant who requests appointment either in person or by mail pursuant to Texas Election Code Sections 13.032 and 13.033(a).

■ Injunctive relief ordering Defendant Callanen to provide a copy of the Volunteer Deputy Registrar Examination to any eligible applicant who appears in person having completed the Secretary of State's online training.

■ Injunctive relief ordering Defendants to post a notice of the election that includes a complete list of Election Day polling locations to the Bexar County Election Departments' website no later than October 13, 2020.

■ Injunctive relief ordering Defendants to operate a minimum of 311 election-day polling locations on November 3, 2020 from 7 a.m. to 7 p.m.

Dated: October 6, 2020.                              Respectfully submitted,

By: /s/ Joaquin Gonzalez

Mimi Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org

33

Joaquin Gonzalez
Texas Bar No. 24109935
joaquin@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**_ATTORNEYS FOR PLAINTIFFS_**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 6, 2020, a true and correct copy of the foregoing *Petition and Application* was served upon counsel for Defendants by email at lroberson@bexar.org, in accordance with TEX.R.CIV.P. 21(a).

<u>*/s/* Joaquin Gonzalez</u>

## DECLARATION OF MICHELLE TREMILLO
*(Texas Civil Practice and Remedies Code, Section 132.001)*

My name is Michelle Tremillo, my date of birth is 02/26/1975. I am the Executive Director of

Texas Organizing Project and my address is 242 E Sunshine Dr, San Antonio, TX 78228.

I declare under penalty of perjury that the facts stated in Paragraphs 2, 75, and 79 of the

foregoing Petition and Application for Temporary Injunction are true and correct.


Executed in Bexar County, State of Texas, on 5th day of October , 2020.

Michelle Tremillo

## DECLARATION OF H. DREW GALLOWAY
*(Texas Civil Practice and Remedies Code, Section 132.001)*

My name is H. Drew Galloway and my date of birth is <u>July 25, 1982</u>. I am the Executive

Director of MOVE Texas Civic Fund and my address is <u>1023 North Pine Street, San Antonio,</u>

<u>Texas 78202</u>. I declare under penalty of perjury that the facts stated in Paragraphs 3, 40-45, 74,

78 of the foregoing Petition and Application for Temporary Injunction are true and correct.


Executed in Bexar County, State of Texas, on <u>5th</u> day of <u>October,</u> 2020.

_____

H. Drew Galloway

## DECLARATION OF JENNIFER K. FALCON
*(Texas Civil Practice and Remedies Code, Section 132.001)*

My name is Jennifer K. Falcon, my date of birth is 10 24 82, and my address is

1055 Sutton Dr. San Antonio, TX 78228.

I declare under penalty of perjury that, except as to paragraphs 2-3, 40-45, 74-75, and 78-79, the

facts stated in the foregoing Petition and Application for Temporary Injunction are true and

correct.

Executed in Bexar County, State of Texas, on 4th day of October, 2020.

Jennifer K. Falcon

Ex. A

# Texas Secretary of State
## Ruth R. Hughs

**COVID-19 - As recommended precautions continue to increase for COVID-19, the James E. Rudder ☒ Building will be closed to visitors and customers beginning Wednesday, March 18, 2020. The Office of the Secretary of State is committed to continuing to provide services to ensure business and public filings remain available 24/7 through our online business service, SOSDirect or use the new SOSUpload. Thank you in advance for your patience during this difficult time. Information on Testing Sites is now available.**

-----------------------------------------------------------------------

Note - Navigational menus along with other non-content related elements have been removed for your convenience. Thank you for visiting us online.

# Election Advisory No. 2018-31

**To:**　　County Election Officials

**From:** Keith Ingram, Director of Elections　Keith Ingram's signature

**Date:**　September 27, 2018

**RE:**　　Volunteer Deputy Registrars

As the general election approaches, you may be deputizing new Volunteer Deputy Registrars ("VDR") or have questions about current VDR's. VDR's are entrusted with the responsibility of distributing voter registration application forms throughout the county and receiving registration applications back from voters on behalf of the county. They are appointed by county voter registrars ("VR") and charged with helping increase voter registration in the state. Pursuant to 13.047 of the Texas Election Code, the Secretary of State is responsible for adopting training standards, developing materials for the training, and distributing the materials to the counties. This advisory outlines our current resources and provides answers to frequently asked questions.

In addition to this Advisory, we have prescribed the following resources:

- Advisory 2012-04 (Directive) Training for Volunteer Deputy Registrars
- Volunteer Deputy Registrar Guide (Spanish)
- Volunteer Deputy Registrar Training (PDF) | Spanish (PDF)
- Request for Appointment as a Volunteer Deputy Registrar (PDF)
- Certificate of Appointment for Volunteer Deputy Registrar (PDF)
- Volunteer Deputy Examination (if needed)

Please note that the Volunteer Deputy Registrar Guide and the Volunteer Deputy Training are available in Spanish. We have also prescribed an optional examination that is available in Spanish. County voter

registrars can obtain the answer key on our DocShare site or by emailing the <u>Elections Division</u>.

## Optional Training Method

Senate Bill 142 (Regular Session, 2015), provides an optional training method for the appointment of volunteer deputy registrars. Instead of holding in-person training sessions, a county **MAY** adopt a procedure that allows a person to review the SOS online Volunteer Deputy Registrar training. Upon completing the training, they must appear in person in the voter register's office to take an examination. Upon satisfactory completion of the examination, and completion of the Request of Appointment, the voter registrar must appoint the person as a VDR. They will be issued a Certificate of Appointment. As this time, the county can provide the newly appointed VDR of any county specific procedures. The voter registrar must advise the newly appointed volunteer deputy registrar that the only requirements for voter registration are those prescribed by state law or by the Secretary of State.

The examination is "open-book." A potential VDR can use the training materials to assist them when completing the examination. A potential VDR is required to answer at least 90% (18 of 20) of the examination questions to successfully complete the application. The Election Code does not provide a limit to the number of times a potential VDR can take the examination before passing.

The online training and examination procedure can be adopted by decision of the Voter Registrar. The VR does not have to adopt the online training and examination procedure by order of the Commissioners Court, but can if the VR chooses to do so.

Counties are not required to adopt the online training and examination, and can continue to conduct only in-person training for VDRs without requiring an examination. Please note that if you do not schedule more than one training per month or if that training you schedule is only offered during business hours, we STRONGLY recommend that you adopt the optional on-line training method so as to allow more individuals the opportunity to be appointed as a VDR in your county.

## Minimum Training Standards

Advisory 2012-04 is our directive on training standards and it outlined the following requirements:

- The voter registrar must establish a schedule of times and places where such training for volunteer deputy registrars will be offered, if they have not adopted an **optional training method prescribed by the SOS**.
- The voter register **may** adopt their own examination that VDRs must complete at the end of their in-person training. If the VR adopts and examination, the SOS must approve the county exam (13.048(a)).
- The county training **must** include the Secretary of State prescribed power point.
- The county training **may** also include additional training materials provided by the county voter registrar.
- Voter Registrars **must** offer training at a minimum of one a month. However, the SOS strongly recommends that you offer more than one training per month and that you offer trainings outside of business hours. If you are unable do so, your office should consider adopting the **optional on-line training method** discussed above.

- Volunteer deputy registrars **must** undergo the Secretary of State's standards of training each time they receive a certificate of appointment that is in connection with each election cycle for which they are appointed that ends on December 31 of each even-numbered year.

## Appointment of VDRs Trained in other Counties

If the volunteer deputy registrar has already been trained and appointed in another county during the current election cycle, he/she does not have to undergo additional training nor complete another examination. You may ask the previous registrar to confirm that the volunteer deputy registrar has undergone such training. A county can continue to provide county-specific information to VDRs at the time of certification, but cannot require that the VDR complete any additional examinations.

## Volunteer Deputy Registrar Materials

The county Voter Registrar must distribute to each appointed volunteer deputy registrar the following materials:

1. The Texas Volunteer Deputy Registrar Guide,
2. Plenty of voter registration applications containing the county return address,
3. A certificate of appointment, and
4. A receipt book.

VDRs may also print blank applications from the Secretary of State's website or request blank applications from the SOS directly.

**NOTE:** Some counties use VR applications with a perforated receipt that can be detached and given to the voter. The SOS has approved a version of this application.

## Frequently Asked Questions

1. **Does a VDR need to be a registered voter in the county they are wanting to become a VDR in?**

   No, a VDR does not need to be a registered voter in the county where they are wanting to become a VDR or even a registered voter in Texas. The potential VDR only needs to be a resident of the State of Texas.

2. **What are the qualifications to become a VDR?**

   A VDR must be:

   - be at least 18 years old;
   - be a United States citizen;
   - not have been determined by a final judgment of a court exercising probate jurisdiction to be
     1. totally mentally incapacitated, or
     2. partially mentally incapacitated without the right to vote;
   - never have been convicted of failing to deliver a voter application to a voter registrar;
   - not have been finally convicted of a felony, or, if convicted, must have

1. fully discharged the sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court, or
2. been pardoned or otherwise released from the resulting disability to vote;

- not have been finally convicted of identity theft under Section 32.51 of the Penal Code; and
- be a resident of the State of Texas.

3. **Does the county have to offer in-person VDR training?**

No, as a county, you do not have to have in-person training, if you adopt an optional online training method prescribed by the SOS.

4. **If the county has in-person training, can a potential VDR still do the online training prescribed by the SOS?**

Yes, a potential VDR could take the county in-person training or the online training prescribed by the SOS, if the county has adopted the optional online training in their county.

5. **Can a potential VDR request to take the SOS examination in our county if we have not adopted the examination?**

No. If a county has not adopted the SOS online training and examination procedure, a potential VDR will be required to attend the in-person training to become certified.

6. **Can we continue to provide county-specific information to VDRs?**

Yes. A VR can continue to provide county-specific information to VDRs at the time of certification, regardless if they choose to adopt the examination. In a county that has adopted the examination, a VDR who successfully completes the examination must also receive the county-specific information.

7. **When a potential VDR comes in person to take the examination does the VR have to give them the examination at that time?**

Yes, as a VR if a potential VDR comes in-person to take the examination, then you MUST give them the examination that day during the voter registrar's regular business hours.

8. **How many times can a potential VDR take an examination if they fail?**

The code does NOT have a limit of times that a potential VDR can take an examination, therefore a person shall be allowed to take the exam more than once.

9. **Can I as a VR refuse to appoint a VDR?**

No, under Section 13.032 of the Texas Election Code, a VR may not refuse to appoint a VDR unless they do not meet the qualifications to become a VDR. (13.032)

10. **As a VR can I terminate a VDR's appointment?**

Yes, please refer to Section 13.036 for a list of reasons why a VDR may be terminated. Please note that under 13.036, these are the only reasons a VDR can be terminated.

11. **What are the general powers of a VDR?**

A volunteer deputy registrar may distribute voter registration application forms throughout the county and receive registration applications submitted to the deputy in person. Please note that a VDR is limited to voter registration applications only. A VDR could not accept an application for ballot by mail or an FPCA, and deliver it to the early voting clerk.

12. **How many applications must a VR provide to a VDR?**

A VR should be generous in the number of blank applications they provide to a VDR. If a VR is concerned about cost, they can always request reimbursement for these costs with Chapter 19 funds, if they are available to the county.

13. **What does a VDR do with the receipt books?**

For each completed voter registration application, a VDR may fill out a receipt in duplicate and give each applicant the original receipt. The duplicate receipts must be delivered to the voter registrar along with the applications. A VDR may wish to keep copies or stubs for their records. **The VDR should not keep copies of the completed voter registration applications because these documents contain information that is confidential by law. A VDR MUST deliver completed registration applications and receipts in person to the voter registrar no later than 5 p.m. on the 5th day after the date you receive them. (13.042(b)).**

**NOTE: An application submitted after the 34th day before the date of an election and on or before the last day for a person to timely submit a registration application for that election shall be delivered not later than 5:00 pm of the next regular business day after the date to timely submit a registration application for that election. (13.042)(c)).**

## Failure to deliver an application in a timely manner is a criminal offense

14. **How long does a VDR need to keep their receipt books?**

It is not addressed in the Code, but we would suggest that a VDR should retain the receipt books for 22 months following the election closest to the effective date of the applications. Please inform the VDR to communicate with you as a VR, as you may have their own timeline of retaining the receipt books.

15. **I am a candidate and/or working for a campaign. May I serve as a volunteer deputy registrar?**

Yes. There is no prohibition against a candidate or a campaign worker serving as a deputy registrar, as long as they otherwise meet the "Qualifications" described above and have been officially appointed as a volunteer deputy registrar. Similarly, there is no prohibition against a volunteer deputy registrar registering voters at a campaign rally for a candidate or event. While working at rally or public event, a volunteer deputy registrar must offer registration to anyone who requests it. A VDR cannot refuse to accept an application if the voter does not want to vote for the candidate a VDR works for.

16. **As a VDR, can they accept applications from a voter in another county?**

No. A Volunteer deputy registrar status is conferred on a county-by-county basis. For VDR's to accept applications for Y or Z counties, a VDR would have to become a volunteer deputy registrar for those counties. A VDR could certainly give applications to the attendees from County Y and County Z and direct them to mail the application to the appropriate county voter registrar's office. A person commits a Class C misdemeanor by acting as a volunteer deputy registrar when he or she does not have an effective appointment as a deputy registrar. (13.044).

17. **May a VDR assist and witness multiple applicants?**

Yes. A VDR may assist and witness multiple applicants. If an applicant cannot sign his/her name on the application, the applicant may make a mark on the signature line. VDRs should: (1) Print the name of the applicant beside the mark, and (2) sign their name and address as the witness as required by Section 1.011 of the Texas Election Code.

18. **Must a VDR submit applications in person to the VR's Office?**

Yes. Applications must be submitted in person by the VDR or by personal delivery through another designated volunteer deputy registrar. The VDR should NOT mail the voter registration applications to the VR's office.

19. **What if a voter submits an application that is not complete?**

The VDR should be reviewing the application for completeness in the presence of the voter before the VDR accepts and delivers the application to the VR. (13.039).

20. **What if I get an application from a VDR for another county?**

Assuming the VDR is a VDR in that county, you as a VR will forward the application to the correct county.

21. **When is the effective date of registration for an applicant submitting its application to a VDR?**

Assuming the individual is otherwise eligible to vote, the applicant's registration will be effective 30 days after the date of submission to the VDR.

22. **As a VR must I keep an active appointment file of a VDR?**

Yes. The registrar shall maintain a file containing the duplicate certificates of appointment of the volunteer deputy registrars whose appointments are effective. (b) The registrar shall maintain the file in alphabetical order by deputy name on a countywide basis. (c) Each certificate shall be retained on file during the time the appointment is effective.

23. **As a VR must I keep an inactive appointment file?**

Yes. The registrar shall maintain a file containing the duplicate certificates of appointment of the volunteer deputy registrars whose appointments have been terminated. (b) The registrar shall enter

the date of and reason for termination on each duplicate certificate. (c) The registrar shall maintain the file in alphabetical order by deputy name on a countywide basis. (d) Each certificate shall be retained on file for two years after the date of termination.

All references are to the Texas Election Code (unless otherwise cited) available here:

Texas Constitution and Statutes

If you have any questions about the information in this advisory, please contact the Elections Division at 1-800-252-VOTE(8683).

KI:CA:KR

Ex. B

# Joint General, Special, Charter and Bond Election November 6, 2018

| Precinct | Guest | *Location | Address |
|---|---|---|---|
| 1001 | /1003/1008/1010/1120/1126 | San Antonio Housing Authority | 818 S. Flores |
| 1004 | /1028/1097 | St. Leo Catholic Church (Hall) | 4423 S. Flores |
| 1005 | /1074/1098/1119 | Burbank High School | 1002 Edwards St. |
| 1006 | | St. James Catholic Church | 907 W. Theo Ave. |
| 1007 | /1014 | Graebner Elementary School | 530 Hoover Ave. |
| 1012 | /1070 | John Glenn Elementary School | 2385 Horal Dr. |
| 1013 | | Kelly Elementary School | 1026 Thompson Pl. |
| 1018 | /1011/1016/1017 | Adams Elementary School | 135 E. Southcross |
| 1020 | /1019 | Wright Elementary School | 115 E. Huff Ave. |
| 1021 | /1127 | Rayburn Elementary School | 635 Rayburn Dr. |
| 1023 | /1015/1022 | Collier Elementary School | 834 W. Southcross |
| 1024 | /1139 | Pease Middle School | 201 Hunt Ln. |
| 1026 | | Dwight Middle School | 2454 W. Southcross |
| 1029 | /1030/1031/1090/1096 | Brentwood Middle School | 1626 W. Thompson Pl. |
| 1032 | | Gardendale Elementary School | 1731 Dahlgreen Ave. |
| 1034 | | Ralph Langley Elementary School | 14185 Bella Vista |
| 1036 | /1033/1035/1095/1131/1132/1134/1135 | Valley Hi Elementary School | 8503 Ray Ellison Blvd. |
| 1037 | | Frank Madla Elementary School | 6100 Royalgate Dr. |
| 1038 | | Five Palms Elementary School | 7138 Five Palms Dr. |
| 1040 | /1025 | Miguel Carrillo, Jr. Elementary School | 500 Price Ave. |

| 1042 |  | **Palo Alto Elementary School** | 1725 Palo Alto Rd |
|---|---|---|---|
| 1045 | /1041 | **South San Antonio High School** | 7535 Barlite Blvd. |
| 1046 | /1044 | **Ramirez Community Center** | 1011 Gillette Blvd. |
| 1047 |  | **Vestal Elementary School** | 1111 W. Vestal Pl. |
| 1048 |  | **Gillette Elementary School** | 625 Gillette Blvd. |
| 1049 | /1051/1052 | **Precinct 1 Satellite Office** | 3505 Pleasanton Rd. |
| 1050 | /1053 | **Harlandale Community Center (Gym)** | 7227 Briar Pl |
| 1054 |  | **Kingsborough Middle School** | 422 Ashley Rd. |
| 1055 |  | **Virginia Myers Elementary School** | 3031 Village Pkwy |
| 1056 | /1124 | **Mission Del Lago Community Center** | 2301 Del Lago Pkwy |
| 1060 |  | **Bob Hope Elementary School** | 3022 Reforma Dr. |
| 1061 | /1039 | **Sky Harbour Elementary School** | 5902 Fishers Bend |
| 1064 | /1146 | **City of Von Ormy Municipality** | 14729 Quarter Horse Bldg. 1 |
| 1065 | /1063/1123 | **Somerset ISD Central Office** | 7791 6th St. |
| 1067 | /1066 | **Southwest ISD Admin Building** | 11914 Dragon Ln. |
| 1068 | /1128 | **Luckey Ranch Elementary School** | 12045 Luckey River |
| 1071 | /1076 | **Adams Hill Elementary School** | 9627 Adams Hill Dr. |
| 1073 |  | **Ott Elementary School** | 100 N Grosenbacher |
| 1075 | /1094/1133 | **Alan Shepard Middle School** | 5558 Ray Ellison Blvd. |
| 1078 | /1077 | **Lowell Middle School** | 919 Thompson Pl. |
| 1079 |  | **Dr. Winn Murnin Elementary School** | 9019 Dugas |
| 1080 | /1138 | **Hatchett Elementary School** | 10700 Ingram Rd. |
| 1081 |  | **Blue Skies of Texas West** | 5100 John D. Ryan Blvd. |

| 1082 | /1027 | Big Country Elementary School | 2250 Pue Rd. |
|---|---|---|---|
| 1083 | /1130 | Lewis Elementary School | 1000 Seascape |
| 1084 | | Mary Hull Elementary School | 7320 Remuda St. |
| 1085 | /1043 | Westwood Terrace Elementary School | 2315 Hackamore Lane |
| 1086 | | Meadow Village Elementary School | 1406 Meadow Way Dr. |
| 1087 | | Henry A Guerra, Jr. Library | 7978 Military Drive W |
| 1088 | | Perales Elementary School | 1507 Ceralvo St. |
| 1091 | /1089/1115/1117 | Mission Academy | 9210 South Presa |
| 1092 | /1059/1062/1105/1114 | Spicewood Park Elementary School | 11303 Tilson Dr. |
| 1093 | /1069/1109/1113 | Vale Middle School | 2120 N. Ellison Dr |
| 1099 | | Evers Elementary School | 1715 Richland Hills Dr. |
| 1100 | /1002/1009/1101 | Ed Cody Elementary School | 10403 Dugas Dr. |
| 1102 | /1057 | Freedom Elementary School | 3845 S Loop 1604 E |
| 1104 | /1072 | Carlos Coon Elementary School | 3110 Timber View Dr. |
| 1107 | /1058 | Southside ISD Admin Bldg (Board Room) | 1460 Martinez-Losoya Rd. |
| 1108 | | Galm Elementary School | 1454 Saxon Hill |
| 1110 | | Mora Elementary School | 1520 American Lotus |
| 1111 | | Raba Elementary School | 9740 Raba |
| 1112 | /1106/1136/1142 | Mary Michael Elementary School | 3155 Quiet Plain |
| 1118 | /1125 | Lieck Elementary School | 12600 Reid Ranch |
| 1121 | | St. Anthony Claret Catholic Church | 6150 Roft Rd. |
| 1122 | | John Hoffmann Elementary School | 12118 Volunteer Parkway |
| 1129 | /1103/1116/1145 | Cole Elementary School | 13185 Tillman Ridge |

| | | | |
|------|---------------------------|-------------------------------------------|------------------------------|
| 1141 | /1140 | **Bobbye Behlau Elementary School** | **2355 Camplight Way** |
| 1143 | /1137 | **Mireles Elementary School** | **12260 Rockwall Mill** |
| 1144 | | **Hill Country Retreat** | **4550 Del Webb Blvd.** |
| 2002 | /2001/2033 | **Lanier High School** | **1514 W. Cesar E. Chavez Blvd** |
| 2003 | /2034 | **Margil Elementary School** | **1000 Perez St.** |
| 2007 | | **Crockett Elementary School** | **2215 Morales St.** |
| 2010 | /2092/2150 | **Shepherd King Lutheran Church** | **303 W. Ramsey Rd.** |
| 2011 | /2017 | **Las Palmas Library** | **515 Castroville Rd.** |
| 2013 | /2005 | **Fenwick Elementary School** | **1930 Waverly Ave.** |
| 2015 | /2012/2089 | **Gus Garcia Middle School** | **3306 Ruiz St.** |
| 2018 | /2117/2118 | **Collins Garden Library** | **200 N. Park Blvd.** |
| 2019 | /2016 | **Edgewood Gym** | **4133 Eldridge Ave.** |
| 2020 | | **Wrenn Middle School** | **627 S. Acme Rd.** |
| 2022 | /2014/2074 | **Memorial Branch Library** | **3222 Culebra Rd.** |
| 2023 | /2021 | **Huppertz Elementary School** | **247 Bangor St.** |
| 2024 | | **Woodlawn Hills Elementary School** | **110 W. Quill Dr.** |
| 2025 | | **Longfellow Middle School** | **1130 E. Sunshine Dr.** |
| 2026 | /2081/2119/2142/2151/2157 | **Pat Neff Middle School** | **5227 Evers Rd.** |
| 2028 | /2027 | **Joe Ward Recreation Center** | **435 E Sunshine Dr.** |
| 2029 | /2030 | **Sarah King Elementary School** | **1001 Ceralvo St.** |
| 2031 | /2032 | **Storm Elementary School** | **435 Brady Blvd** |
| 2035 | /2036 | **Laurel Heights United Methodist Church** | **227 W. Woodlawn Ave.** |
| 2038 | /2137 | **San Pedro Church of Christ** | **311 Jackson Keller Rd.** |

| | | | |
|---|---|---|---|
| 2039 | /2048/2067 | Huisache Avenue Baptist Church | 1339 W. Huisache Ave. |
| 2040 | | Villarreal Elementary School | 2902 White Tail Dr |
| 2041 | | Sul Ross Middle School | 3630 Callaghan Rd. |
| 2042 | /2128 | Esparza Elementary School | 5700 Hemphill Dr. |
| 2043 | | Stafford Elementary School | 415 S.W. 36th St. |
| 2044 | | Meadowcliff Recreation Center | 1240 Pinn Rd. |
| 2045 | | Woodlawn Academy | 1717 W. Magnolia Ave. |
| 2046 | | Young Women's Leadership Academy | 2123 W. Huisache Ave. |
| 2049 | | Linton Elementary School | 2103 Oakhill Rd. |
| 2050 | | Powell Elementary School | 6003 Thunder Dr. |
| 2051 | /2152 | Fox Tech High School | 637 N. Main Ave |
| 2053 | /2052 | Edison High School | 701 Santa Monica Dr. |
| 2054 | | Kenwood Community Center | 305 Dora St. |
| 2055 | /2094 | Alamo Stadium Convocation Center | 110 Tuleta Dr. |
| 2057 | /2056 | Westminster Square | 1838 Basse Rd. |
| 2059 | /2006 | Whittier Middle School | 2101 Edison Dr. |
| 2060 | | Maverick Elementary School | 107 Raleigh Pl. |
| 2061 | /2143 | Leon Valley City Hall | 6400 El Verde Rd. |
| 2063 | /2154 | San Antonio M.U.D #1 | 16450 Wildlake |
| 2064 | /2062/2110 | Dellview Elementary School | 7235 Dewhurst Rd. |
| 2065 | /2147 | Ward Elementary School | 8400 Cavern Hill |
| 2066 | /2099 | Scenic Hills Seventh-Day Adventist Church | 11223 Bandera Rd. |
| 2068 | /2106 | Great Northwest Library | 9050 Wellwood |

| | | | |
|---|---|---|---|
| 2069 | | Community Alliance Traffic Safety (CATS) | 7719 Pipers Lane |
| 2070 | /2071/2079 | Barkley-Ruiz  Elementary School | 1111 S. Navidad St. |
| 2072 | | Brauchle Elementary School | 8555 Bowens Crossing |
| 2073 | /2080/2100 | West Avenue Elementary School | 3915 West Ave. |
| 2076 | /2139 | Nichols Elementary School | 9560 Braun Rd. |
| 2077 | | Jimmy Elrod Elementary School | 8885 Heath Circle Dr. |
| 2078 | /2098 | Knowlton Elementary School | 9500 Timber Path |
| 2082 | /2114 | Olmos Elementary School | 1103 Allena Dr. |
| 2083 | /2047 | Jefferson High School | 723 Donaldson Ave. |
| 2084 | /2037 | Maury Maverick, Jr. Library | 8700 Mystic Park |
| 2085 | /2058 | Westfall Branch Library | 6111 Rosedale Ct. |
| 2087 | /2086/2133/2159 | Carson Elementary School | 8151 Old Tezel Rd. |
| 2088 | | H. B. Zachry Middle School | 9410 Timber Path |
| 2090 | /2140 | Timberhill Villa Retirement Center | 5050 Timberhill |
| 2091 | /2153/2156 | Shepherd of the Hills Lutheran Church | 6914 Wurzbach Rd. |
| 2097 | | Burke Elementary School | 10111 Terra Oak |
| 2101 | /2095 | Kuentz Elementary School | 12303 Leslie Rd. |
| 2102 | | Fernandez Elementary School | 6845 Ridgebrook St. |
| 2103 | /2008 | Cleto L. Rodriguez Elementary School | 3626 W. Cesar Chavez Blvd. |
| 2105 | /2004/2075/2104 | Ogden Elementary School | 2215 Leal St. |
| 2107 | /2120 | Fields Elementary School | 9570 FM 1560 |
| 2108 | | Coke Stevenson Middle School | 8403 Tezel Rd. |
| 2111 | /2124/2134/2146 | Balcones Heights City Hall | 3300 Hillcrest Dr. |

| | | | |
|---|---|---|---|
| 2112 | /2126 | **Leon Valley Elementary School** | **7111 Huebner Rd.** |
| 2115 | /2158/2160/5555 | **Dr. Pat Henderson Elementary School** | **14605 Kallison Bend** |
| 2123 | | **Northwest Church of Christ** | **9681 W. Loop 1604 N.** |
| 2125 | /2093 | **Scarborough Elementary School** | **12280 Silver Pointe (at Stillwater Pkwy)** |
| 2127 | | **Northwest Crossing Elementary School** | **10255 Dover Rdg.** |
| 2136 | | **Dean H. Krueger Elementary School** | **9900 Wildhorse Parkway** |
| 2138 | /2109/2116/2121/2129/2131/2132/2135/2144/2155 | **Ridgeview Elementary School** | **8223 McCullough Ave.** |
| 2141 | /2130/2145 | **Connally Middle School** | **8661 Silent Sunrise** |
| 2148 | /2009/2113 | **Mead Elementary School** | **3803 Midhorizon Dr.** |
| 2149 | /2096/2122 | **Health Careers High School** | **4646 Hamilton Wolfe Rd.** |
| 3001 | | **Las Lomas Elementary School** | **20303 Hardy Oak Blvd** |
| 3003 | /3002/3139 | **John Marshall High School** | **8000 Lobo Ln.** |
| 3005 | | **Pieper Ranch Middle School** | **1106 Kinder Parkway** |
| 3007 | | **Roan Forest Elementary School** | **22710 Roan Park** |
| 3011 | /3006/3111/3136/3166/3182 | **Colonial Hills United Methodist Church** | **5247 Vance Jackson** |
| 3012 | /3203 | **Dr. Sara McAndrew Elementary School** | **26615 Toutant Beauregard Rd.** |
| 3013 | /3024/3167/3175 | **Colonies North Elementary School** | **9915 Northampton** |
| 3015 | /3140 | **Glenoaks Elementary School** | **5103 Newcome Dr.** |
| 3017 | /3034/3097 | **Fair Oaks Ranch City Hall** | **7286 Dietz Elkhorn Rd.** |
| 3018 | | **Olmos Park City Hall** | **120 El Prado Dr. W** |
| 3021 | /3022/3177 | **Terrell Hills City Hall** | **5100 N. New Braunfels** |
| 3023 | /3054 | **Rudder Middle School** | **6558 Horn Blvd.** |

| 3025 | /3026 | Alamo Heights City Hall | 6116 Broadway St. |
|---|---|---|---|
| 3027 | /3156 | Frontier Enterprises | 8520 Crownhill Blvd. |
| 3028 | /3084 | Madison High School | 5005 Stahl Rd. |
| 3033 | | Alzafar Shrine Auditorium | 901 N Loop 1604 W |
| 3036 | /3143 | Carnahan Elementary School | 6839 Babcock |
| 3037 | | Scobee Elementary School | 11223 Cedar Park |
| 3039 | /3123 | M. H. Specht Elementary School | 25815 Overlook Pkwy |
| 3042 | /3155 | Lopez Middle School | 23103 Hardy Oak Blvd. |
| 3047 | /3048 | Woodridge Elementary School | 100 Woodridge |
| 3049 | | Northwood Elementary School | 519 Pike Rd. |
| 3051 | /3009/3126/3128 | Grey Forest Community Center | 18249 Sherwood Trail |
| 3052 | | Barbara Bush Middle School | 1500 Evans Rd. |
| 3053 | /3004/3046/3178 | Alamo Heights United Methodist Church | 825 E. Basse |
| 3055 | /3194 | Healing Place Church | 28703 IH 10 W |
| 3056 | /3010/3073 | Clark High School | 5150 De Zavala Rd. |
| 3058 | /3149/3195 | Ed Rawlinson Middle School | 14100 Vance Jackson |
| 3059 | /3181 | Grace Bible Chapel | 18911 Redland Rd. |
| 3060 | /3050/3061 | Regency Place Elementary School | 2635 MacArthur View |
| 3062 | /3079 | Coker United Methodist Church | 231 E North Loop Rd. |
| 3064 | /3014/3031/3063 | Harmony Hills Elementary School | 10727 Memory Lane |
| 3067 | /3038/3041/3133/3171 | Castle Hills City Hall | 209 Lemonwood |
| 3068 | /3066 | Larkspur Elementary School | 1802 Larkspur |
| 3069 | /3179 | Adante Independent Living | 2702 Cembalo Blvd. |

| 3070 | /3057/3115 | Hunters Creek Racquet Club | 3630 Hunters Circle St. |
|------|-----------|----------------------------|-------------------------|
| 3071 | /3135 | Cody Library | 11441 Vance Jackson Rd. |
| 3074 | | Woods of Shavano Community Club | 13838 Parksite Woods St. |
| 3075 | /3176 | Shavano Park City Hall | 900 Saddletree Ct. |
| 3081 | /3117 | Brookhollow Library | 530 Heimer Rd. |
| 3082 | /3040/3120 | Wetmore Elementary School | 3250 Thousand Oaks |
| 3083 | /3085/3122/3138 | St. Mark's the Evangelist Catholic Church | 1602 Thousand Oaks |
| 3086 | /3077 | Oak Meadow Elementary School | 2800 Hunters Green |
| 3088 | | Bulverde Creek Elementary School | 3839 Canyon Parkway |
| 3089 | /3148 | Timberwood Park Elementary School | 26715 S. Glenrose |
| 3090 | /3153 | Thousand Oaks Elementary School | 16080 Henderson Pass |
| 3091 | | Hill Country Village City Hall | 116 Aspen Lane |
| 3092 | | Hollywood  Park City Hall | 2 Mecca Dr. |
| 3093 | | Vineyard Ranch Elementary School | 16818 Huebner Rd. |
| 3094 | /3184 | Leon Springs Elementary School | 23881 IH 10 W |
| 3095 | /3098/3142 | Monroe S. May Elementary School | 15707 Chase Hill Blvd. |
| 3096 | | Cross Mountain Church | 24891 Boerne Stage Rd. |
| 3099 | /3101 | Bob Beard Elementary School | 8725 Sonoma Parkway |
| 3100 | | Steubing Ranch Elementary School | 5100 Knoll Creek |
| 3102 | /3045 | Hidden Forest Community Clubhouse | 831 Sherman Oak |
| 3104 | /3154 | Faith Lutheran Church | 14819 Jones Maltsberger Rd. |
| 3105 | /3087/3103/3170/3183 | Fox Run Elementary School | 6111 Fox Creek St. |
| 3106 | /3008/3158/3160/3169 | Helotes Elementary School | 13878 Riggs Rd. |

| 3107 | | Rhodes Elementary School | 5714 North Knoll |
|------|------------------|----------------------------|------------------|
| 3108 | /3157 | Redland Oaks Elementary School | 16650 Red Land Rd. |
| 3110 | | Longs Creek Elementary School | 15806 O'Connor Rd. |
| 3113 | /3112 | William P. Hobby Middle School | 11843 Vance Jackson |
| 3114 | | Encino Park Community Center | 1923 Encino Rio |
| 3116 | /3141 | Oak Hills Terrace Elementary School | 5710 Cary Grant Dr. |
| 3119 | /3030 | Hartman Center II - Building One | 1202 W. Bitters Bldg 1 |
| 3121 | | Hardy Oak Elementary School | 22900 Hardy Oak Blvd |
| 3125 | | Tuscany Heights Elementary School | 25001 Wilderness Oak |
| 3134 | | Katherine Stinson Middle School | 13200 Skyhawk Dr. |
| 3137 | /3124/3144 | Cibolo Green Elementary School | 24315 Bulverde Green |
| 3145 | | Hope Center Church | 4545 N. Loop 1604 E. |
| 3146 | /3029 | First Chinese Baptist Church | 5481 Prue Rd. |
| 3147 | /3032/3035 | Thornton Elementary School | 6450 Pembroke |
| 3150 | /3080/3131/3180 | Blossom Athletic Center | 12002 Jones Maltsberger Rd. |
| 3151 | | Ellison Elementary School | 7132 Oak Dr. |
| 3152 | /3019/3065 | McDermott Elementary School | 5111 USAA Blvd. |
| 3159 | /3118 | Church of Reconciliation-Episcopal | 8900 Starcrest |
| 3161 | /3132 | Churchill High School | 12049 Blanco Rd. |
| 3162 | /3016/3127 | Carl Wanke Elementary School | 10419 Old Prue Rd. |
| 3163 | | Stone Oak Elementary School | 21045 Crescent Oaks |
| 3165 | | Tejeda Middle School | 2909 E. Evans Rd |
| 3172 | /3109 | Murray E. Boone Elementary School | 6614 Spring Time Dr |

| 3174 | /3202 | Aue Elementary School | 24750 Baywater Stage |
|------|-------|------------------------|----------------------|
| 3192 | /3173 | Parman Library | 20735 Wilderness Oak |
| 3193 | /3044/3076/3078 | Huebner Elementary School | 16311 Huebner Rd. |
| 3196 | /3130 | Blattman Elementary School | 3300 North Loop 1604 W. |
| 3197 | 3072 | Tex Hill Middle School | 21314 Bulverde Rd. |
| 3198 | /3168/3185/3186/3187/3188/3189/3190/3191 | Dr. Hector P. Garcia Middle School | 14900 Kyle Seale Parkway |
| 3199 | /3043 | Canyon Springs Golf Club | 24405 Wilderness Oak |
| 3200 | /3129 | John Igo Library | 13330 Kyle Seale Parkway |
| 3201 | /3164 | Indian Springs Elementary School | 25751 Wilderness Oak |
| 3205 | /3020/3204/3206/3207/3208 | Lion's Field | 2809 Broadway St. |
| 4001 | /4018/4203 | San Antonio Central Library | 600 Soledad |
| 4002 | /4014/4075 | Poe Middle School | 814 Aransas Ave |
| 4003 | | Davis Scott YMCA | 1213 Iowa St. |
| 4005 | /4004/4006/4123 | Bowden Elementary School | 515 Willow St. |
| 4010 | /4009/4011 | Young Men's Leadership Academy at Wheatley | 415 Gabriel |
| 4015 | | Beacon Hill Elementary School | 1411 W. Ashby Pl. |
| 4016 | /4027 | Japhet Elementary School | 314 Astor |
| 4017 | | Travis Early College High School | 1915 N. Main Ave. |
| 4019 | /4020 | Foster Academy | 6718 Pecan Valley |
| 4021 | /4205 | Clear Spring Elementary School | 4311 Clear Spring |
| 4023 | /4200 | Rogers Middle School | 314 Galway Dr. |
| 4024 | | Kate Schenck Elementary School | 101 Kate Schenck |
| 4026 | | McCreless Library | 1023 Ada |

| 4028 | /4013/4177 | James Bode Recreation Center | 900 Rigsby |
| 4029 | /4012 | Smith Elementary School | 823 S. Gevers |
| 4032 | /4025/4031 | Highland Hills Elementary School | 734 Glamis Ave. |
| 4033 | /4062/4133/4204 | Pecan Valley Elementary School | 3966 E. Southcross |
| 4036 | /4034 | Hirsch Elementary School | 4826 Seabreeze Dr. |
| 4038 | /4035/4091/4125/4147 | Mount Calvary Lutheran Church | 308 Mount Calvary Dr. |
| 4039 | /4030/4037/4141 | M. L. King Academy | 3501 Martin Luther King |
| 4040 | /4111 | Cameron Elementary School | 3635 Belgium Lane |
| 4041 | /4113 | Davis Middle School | 4702 E. Houston St. |
| 4044 | /4007/4112/4120/4139 | Wilshire Elementary School | 6523 Cascade Pl. |
| 4045 | /4135 | E. Terrell Hills Elementary School | 4415 Bloomdale |
| 4046 | /4117/4210 | Tobin Library @ Oakwell | 4134 Harry Wurzbach |
| 4047 | /4102/4175/4181 | Krueger Middle School | 438 Lanark Dr. |
| 4048 |  | Riverside Park Elementary School | 202 School St. |
| 4049 | /4154 | Ed White Middle School | 7800 Midcrown Dr. |
| 4051 | /4050/4107/4192/4195 | Windcrest Takas Park | 9310 Jim Seal Dr. |
| 4052 | /4022/4115/4131/4134/4149/4206 | Royal Ridge Elementary School | 5933  Royal Ridge Dr. |
| 4055 | /4054/4185 | Crestview Elementary School | 7710 Narrow Pass |
| 4056 | /4100/4158 | Ed Franz Elementary School | 12301 Welcome Dr. |
| 4059 | /4130/4162/4201 | Rosewood Rehabilitation & Care Center | 7700  Mesquite Pass |
| 4060 | /4061/4152 | Montgomery Elementary School | 7047 Montgomery Dr. |
| 4064 | /4042/4080/4145/4146/4182 | Kirby City Hall | 112 Bauman St. |
| 4066 | /4156 | Woodlake Elementary School | 5501 Lake Bend East |

| | | | |
|---|---|---|---|
| 4067 | /4114/4191/4196/4197 | Converse City Hall Conference Room #1 | 405 South Seguin |
| 4069 | /4085/4101/4159 | China Grove City Hall | 2412 FM 1516  S. |
| 4071 | /4118/4136/4137/4151 | St. Hedwig City Hall | 13065 FM - 1346 |
| 4072 | /4078/4121/4209 | East Central High School | 7173 FM 1628 |
| 4073 | /4086/4153/4202 | Harmony Elementary School | 10625 Green Lake Dr. |
| 4074 | /4129/4165/4180 | Elmendorf City Hall | 8304 FM 327 |
| 4076 | /4063/4106/4142/4166 | Park Village Elementary School | 5855 Midcrown |
| 4077 | /4070/4103/4207/4208/4212 | Schaefer Library | 6322 US Hwy. 87 E. |
| 4079 | /4194 | Coronado Village Elementary School | 213 Amistad Blvd |
| 4082 | /4084/4127/4167 | Sam Houston High School | 4635 E. Houston |
| 4088 | /4163 | Spring Meadows Elementary School | 7135 Elm Trail Dr. |
| 4089 | | Kitty Hawk Middle School | 840 Old Cimarron Trl. |
| 4090 | /4053/4092 | Miller's Point Elementary School | 7027 Misty Ridge |
| 4095 | /4094 | El Dorado Elementary School | 12634 El Sendero |
| 4096 | /4099 | Thousand Oaks El Sendero Library | 4618 Thousand Oaks |
| 4098 | /4104/4138/4140/4199 | John H. Wood Jr. Middle School | 14800 Judson Rd. |
| 4108 | /4093/4148 | Woodstone Elementary School | 5602 Fountainwood |
| 4110 | /4008/4119/4122/4128/4178/4183/4184/4186/4211 | Lamar Elementary School | 201 Parland |
| 4124 | | Ball Academy | 343 Koehler Court |
| 4126 | /4087 | Ray D Corbett Jr High School(SCUC) | 12000 Ray Corbett Dr |
| 4132 | /4043/4083/4187 | Judson Middle School | 9695 Schaefer Rd. |
| 4143 | /4068/4109/4189/4190/4193 | Metzger Middle School | 7475 Binz-Engleman Rd. |
| 4144 | /4057/4058/4081/4188 | Universal City Hall | 2150 Universal City Blvd |

| | | | |
|---|---|---|---|
| 4155 | /4157 | Cotton Elementary School | 1616 Blanco Rd. |
| 4160 | | Candlewood Elementary School | 3635 Candleglen |
| 4161 | /4065 | Paschall Elementary School | 6351 Lake View Dr. |
| 4164 | /4097/4105/4116 | Olympia Elementary School | 8439 Athenian |
| 4171 | /4169/4170/4173/4174/4176 | Northern Hills Elementary School | 13901 Higgins Rd. |
| 4179 | /4172 | Stahl Elementary School | 5222 Stahl Rd. |
| 4198 | /4150/4168/ | Elolf Elementary School | 6335 Beech Trail Dr. |

**\*Subject to Change**

Ex. C

NOTICE OF ELECTION
COUNTY OF BEXAR

July 14, 2020

THE STATE OF TEXAS}
COUNTY OF BEXAR}


TO ALL THE QUALIFIED, REGISTERED VOTERS OF THE COUNTY OF BEXAR, TEXAS:

Take notice that the County of Bexar will conduct a Joint Primary Runoff Election for the Republican Party and the Democratic Party of Bexar County for each to nominate federal officers, Members of the State Legislature, state, district, county and precinct officers on Tuesday, July 14, 2020.

Visit www.bexar.org/elections for a complete list of the candidates you are eligible to vote for based on your Party and precinct.

The Vote Centers available for voting on election day, Tuesday, July 14, 2020 from 7:00 A.M. to 7:00 P.M. will be the same as those used by Bexar County, as published on July 12, 2020.   Vote Centers will be able to accept any registered voter from either Party at any one of the sites.

Early voting by personal appearance will also be conducted at locations, dates and times as listed in the attachment.

Applications to vote by mail may be requested from the Bexar County Elections Administrator, Jacquelyn F. Callanen at 210-335- (VOTE) 8683 or by mail at the address listed below:

Jacquelyn F. Callanen
Bexar County Elections Administrator
1103 S. Frio, Ste. 100
San Antonio, TX  78207

Applications for ballot by mail must be received no later than 5:00 P.M. on Thursday, July 2, 2020.

Ex. D



Ex. E



Ex. F

Case 5:20-cv-01189-FB   Document ...   Filed 10/02/20   Page 69 of 84
*UG-98-2019-26150*

# Bexar County, Texas



## Notice of Meeting

The Bexar County Commissioners Court will meet on **Tuesday, August 6, 2019 at 1:30 p.m.** in the Double-Height Courtroom on the Second Floor of the Bexar County Courthouse, 100 Dolorosa, Suite 2.01, in San Antonio, Texas 78205.

### AGENDA

1. Communications, including citizens who signed the register to speak, and reports.

2. **1:30 p.m. - Public Hearing:** The Commissioners Court invites public input regarding Bexar County entering the Secretary of State's Vote Center Program beginning with the November 5, 2019 Election. (Estimated Presentation Time:  As needed)                                      (Jacque Callanen)

3. **1:35 p.m. or immediately following item 2:** Discussion and appropriate action regarding Bexar County entering the Secretary of State's Vote Center Program beginning with the November 5, 2019 Election, to include approval of all necessary documents to participate in the Program, and the cost related to the purchase or lease of voting equipment. (Estimated Presentation Time:  15 minutes)                                      (Jacque Callanen)

4. Discussion and appropriate action for the orders necessary for the conduct of the Tuesday, November 5, 2019 Amendment, Joint General, Special and Bond Election to include:
   a.  An Order calling the Amendment, Joint General, Special and Bond Election;
   b.  An Order designating the main early voting location and branch locations;
   c.  An Order setting compensation for the deputy early voting clerks for early voting;
   d.  An Order designating the rate of pay for up to three temporary employees at the Auditors to assure timely and accurate processing of the election payroll;
   e.  An Order adopting a voting system to be used;
   f.  An Order adopting the resolution designating the number of clerks authorized;
   g.  An Order adopting a resolution for the rate of pay for Election Day judges and clerks;
   h.  An Order adopting the voting times for Saturdays and Sundays for the Amendment Election;
   i.  An Order establishing an early ballot board;
   j.  An Order establishing a Central Counting Station and appointing a Presiding Judge.
   (Estimated Presentation Time:  10 minutes)                                      (Jacque Callanen)

### BEXAR COUNTY COURTHOUSE ACCESSIBILITY STATEMENT

This meeting site is accessible.  The Accessible Entrance to the Bexar County Courthouse is located at the south end of the Courthouse at the intersection of Nueva and Main streets.  To access the second floor, individuals must utilize the accessible ramp located at the southwest corner of the County Courthouse and take the elevator to the second floor.

*Posted: Friday, August 2, 2019  at 3:00 p.m.*

Ex. G



**Office of Commissioner
Justin Rodriguez**
101 W. Nueva, Suite 1032
San Antonio, Texas 78205

**FOR IMMEDIATE RELEASE:**
**July 25, 2019**

**Contact:** Francesca Caballero
210.335.2612/o
210.629.1528/m

## Commissioner Justin Rodriguez Calls for More Voting Machines and Enhanced Community Outreach

Today, Precinct 2 Commissioner Justin Rodriguez submitted a request to Elections Administrator, Jacque Callanen, to bring forward an amended item to Commissioners Court that enables Bexar County to lease additional election voting machines in order to maintain the same level of access to polling locations for voters all across Bexar County in the transition to the Countywide Vote Center Model.

Since the Commissioners Court took action to approve the purchase of new voting machines, the Precinct 2 office has fielded a number of inquiries related to the County's implementation of Countywide Voting Centers for Election Day beginning as early as November 2019.

"While the voting center concept has been overwhelmingly embraced by those I've spoken with, there have been a multitude of concerns raised about the recommended strategy of reducing the number of voting sites to accomplish this goal."

In planning community outreach efforts, Commissioner Rodriguez revisited the Secretary of State's guidelines on the Countywide Polling Place Program and determined that there is no actual requirement for the reduction of polling sites as part of the implementation.

"I have learned that none of the large Texas counties that have implemented voting centers have in fact reduced their respective number of locations. Most have taken the approach of staying the course - keeping level or even increasing in some cases - the number of sites at least through the 2020 election cycle."

In addition, Commissioner Rodriguez has also asked to allocate funding to support a robust outreach and education campaign to raise awareness about the new voting equipment and to ensure voters are well prepared to cast their ballot using the new machines this November.

Commissioner Rodriguez will continue to work with the community and his colleagues on Commissioners Court to advance policies and programs to improve voter access, education, and participation.

###

Ex. H



**RESOLUTION OF BEXAR COUNTY COMMISSIONERS COURT EXPRESSING ITS SUPPORT OF THE BEXAR COUNTY S.M.A.R.T ELECTION INITATIVE AND ENCOURAGING THE ELECTIONS ADMINISTRATOR TO CONSIDER IMPLEMENTING CERTAIN MEASURES TO FURTHER PROTECT THE INTEGRITY OF THE NOVEMBER 2020 GENERAL ELECTION AND SAFEGUARD THE HEALTH OF VOTERS AND ELECTION WORKERS IN BEXAR COUNTY.**

**WHEREAS**, Bexar County and communities throughout the United States have experienced devastating economic loss, housing instability, food insecurity, surges in demand on health care systems, and the loss of countless precious lives because of the COVID-19 pandemic. Recent spikes in COVID-19 positive cases, often after holidays or in relation to large public gatherings, intensify these extraordinary challenges and prolong disruption to nearly all aspects of everyday life;

**WHEREAS**, The COVID-19 pandemic has exacerbated existing barriers to voting and election participation, making it more difficult for people to exercise their right to vote and presents unprecedented challenges for elections administrators across the State of Texas;

**WHEREAS,** on behalf of the citizens of Bexar County and in order take every measure to protect the integrity of the November 2020 General Election, Commissioners Court hereby expresses its support of the Bexar County Safe, Modern, Accessible, Reliable, and Transparent "S.M.A.R.T" Election Initiative.  S.M.A.R.T Election Initiative measures aim to mitigate the threat to public health, maximize voter access, and support citizens in exercising their democratic right in a safe manner during the COVID-19 pandemic;

**WHEREAS,** The Texas Election Code assigns specific authority and duties related to the conduct of General Elections to the both the Governing Body Ordering the Election and to the Election Official administering the election;

**WHEREAS,** Bexar County Elections has received $1,740,599 in federal funds appropriated from the Help America Vote Act and $4,235,046 appropriated from Bexar County's Coronavirus Relief Fund Court to support the administration of elections during the global pandemic;

**WHEREAS,** Commissioners Court supports advancing S.M.A.R.T Initiative measures within Court's legal authority and encourages the Bexar County Elections Administrator to implement S.M.A.R.T Initiative measures within her legal authority;

**WHEREAS,** by passage of this resolution, Commissioners Court affirms its commitment to provide the Bexar County Elections Administrator with the necessary resources, infrastructure, and support to implement Bexar County S.M.A.R.T Election Initiative measures.

**NOW, THEREFORE, AFTER DUE CONSIDERATION BY THE COMMISSIONERS COURT OF BEXAR COUNTY** be it **RESOLVED** that the Bexar County Commissioners Court hereby supports the Bexar County S.M.A.R.T Election Initiative and the implementation of measures through the following actions:

## SECTION I

Within the legal authority and duties of Commissioners Court, the Court hereby supports bringing forward for further approval or advancing through administrative implementation of the following actions:

i. Allocate a portion of the funds previously provided to the Elections Administrator for the purchase of PPE including, but not limited to, face coverings and access to hand sanitizing station(s) and make widely available for voters at all polling locations throughout Early Voting and on Election Day;

ii. Allocate a portion of funds previously provided to the Elections Administrator to mail to all eligible voters age 65 and over who have not already applied, applications to Vote by Mail with prepaid return postage;

iii. Allocate a portion of funds previously provided to the Elections Administrator to provide prepaid return postage to those who receive balloting materials to vote by mail;

iv. Order that one mega vote center be located in each of the four Bexar County Precincts during Early Voting and on Election Day for the purposes of maximizing social distancing, but not to be used as a reason to consolidating or removing other Early Voting or Election Day locations;

v. Order personal appearance voting to be conducted at least 12 hours on each weekday of the early voting period and expand the hours on certain days to at least 10:00 p.m.;

vi. Allocate a portion of funding previously provided to the Elections Administrator or the recruitment and hiring of at least 25% supplemental Election Judges, Alternate Judges, and Election Clerks to ensure there is sufficient pool of backup workers trained and ready to fill last minute vacancies.

vii. Provide appropriate elections training to all non-essential or underutilized Bexar County employees to serve as emergency backup poll workers or elections clerk for the Early Voting Period and Election Day.

viii. Appropriate funds to the Public Information Office to mail to every household with a registered voter(s), a Sample Ballot, information on Early Voting and Election Day Hours and Locations, and information on voting safely during COVID-19.

## SECTION II

Encourages the Election Administrator, within the legal authority and duties of her position to bring forward for approval or advance through administrative implementation of the following actions:

ix.   An Order that personal appearance voting be conducted from 8:00 a.m. – 8:00 p.m. on Saturday, October 17; Sunday, October 18; Saturday, October 23; and Sunday, October 23, 2020 during the early voting period; and

x.    Make available an online tracking system of vote-by-mail ballot applications and mail ballots

## SECTION III

Further evaluation of the following measures utilizing supplemental input currently pending from local public health experts, official opinions or guidance from the Secretary of State, and/or through the exploration of legal avenues permitting implementation:

xi.   Increasing the number of curbside voting machines to facilitate a drive-thru voting option; and

xii.  Alternative delivery options for satellite in-person mail ballot delivery from voters on Election Day to include security and technology at any established drop boxes to ensure chain of custody of the ballot ; and *Video cameras on the drop box, in the transport Vehicles, and Central Tabulating room — TCJR*

xiii. An Order to operate a 24-hour polling site at least one day each week of early voting at a minimum of one Early Voting Polling Location.

## SECTION IV

To better assist the Court understanding the challenges presented in the upcoming November general election and in order to determine the best allocation of public resources, the Court requests that the Bexar County Elections Administrator prepare and submit to the Court members for consideration on or before August 25, 2020 in preparation for a presentation at the next public meeting:

xiv.  The methodology to be used for determining the most effective and equitable number and location of Early Voting and Election Day sites accounting for projected voter turnout, voting equipment reductions and gathering limitations as a result of recommended distancing protocols, average time it takes to cast a ballot, and target voter wait times; and

xv.   Any budget revisions or requests for additional funding or resources that might be necessary for the successful implementation all of the measures outlined in this resolution.

Approved this __14__ day of __August__, 2020.

Nelson W. Wolff                           County Judge

Sergio "Chico" Rodriguez          Commissioner, Precinct 1

Justin Rodriguez                          Commissioner, Precinct 2

Kevin Wolff                                 Commissioner, Precinct 3

Tommy Calvert                           Commissioner, Precinct 4

Ex. I



Oficina Legal del Pueblo Unido, Inc.
1410 Guadalupe Street
San Antonio, TX 78207
210.663.6727(p)
texascivilrightsproject.org

September 10, 2020

Jacque Callanen
Bexar County Elections Administrator
1103 S. Frio
San Antonio, TX 78207
jcallanen@bexar.org

Dear Ms. Callanen,

We are writing regarding Bexar County's violation of the Texas Election Code in the July 2020 election and apparent pending violation based on publicly available information. We write with urgency given that the 2020 general election day is less than 60 days away and coming into compliance requires locating additional polling places as well as possibly acquiring more equipment and staff than presently planned. With this in mind, please confirm in writing that, per the legal requirements explained below, Bexar County will operate a minimum of 311 vote centers (or provide updated registration numbers showing why a lower number may be acceptable) on election day and comply with all legal notice requirements. If we do not hear from you by **September 18, 2020**, we intend to take whatever action is necessary to safeguard the rights of Bexar County registered voters.

First, Bexar County failed to comply with the notice provisions of the Texas Election Code ("TEC") for the July 14, 2020 runoff election. TEC Section 4.003 requires that:

> In addition to any other notice given for an election . . . , not later than the 21st day before election day, a county shall post a copy of a notice of the election given by the county or provided to the county under Section 4.008(a), which must include the location of each polling place, on the county's Internet website, if the county maintains a website.

The notice that was posted on Bexar County's website merely referred to a list of locations that would be made public on July 12, 2020, two days before election day. Such a notice is legally and practically deficient. The purpose of providing notice is so that the public can be aware of the locations and plan accordingly. This is particularly critical in a county that uses countywide vote centers, as individuals' traditional neighborhood locations may have changed. A "check back later" posting does not comply with the law or its purpose. Further, because of the inadequate notice, the county could not comply with notice or other legal requirements when it announced at the last minute that it would be closing locations due to inadequate staffing and COVID-19 concerns. Although it was reported that 3 locations had to be closed,[1] comparison with a prior list of proposed locations indicates that a total of 12 planned locations were ultimately not operated.

---

[1] Jakob Rodriguez, *Three Bexar County Voting Centers Close Prior to July 14 Primary Runoff Election*, KSAT.com (July 13, 2020) https://www.ksat.com/news/local/2020/07/14/three-bexar-county-voting-centers-close-prior-to-july-14-primary-runoff-election.



Second, the number of election day vote centers your office appears to be planning to operate will be legally deficient. Based on a preliminary list, the Elections Department appears to be proposing 273 vote centers on election day. As described below, this falls short of the legally required approximately 311 vote centers that Bexar County should be providing. Although the department alluded to potentially adding "a few" locations at a recent Commissioners Court meeting,[2] there was no indication that it in any way intended to add the approximately 38 locations required by the Election Code.

As you know, Bexar County uses countywide polling, which enables voters to cast their ballot at any polling place irrespective of the election precinct in which they reside. The county is permitted to use this system pursuant to TEC Section 43.007. Section 43.007, however, requires that "[t]he total number of countywide polling places may not be less than . . . 50 percent of the number of precinct polling places that would otherwise be located in the county for that election." Tex. Elec. Code § 43.007(f).

The starting point for determining how many polling places the county would "otherwise" be legally required to provide is section 43.001 of the Code, which mandates that "[e]ach election precinct established for an election shall be served by a single polling place located within the boundary of the precinct." Bexar County currently has 765 election precincts. However, election precincts are generally supposed to "contain at least 100 but not more than 5,000 registered voters." Tex. Elec. Code § 42.006(a). Although no provision explicitly sanctions doing so, we believe the county could justifiably subtract the number of precincts with fewer than 100 registered voters from the applicable total number of election precincts. This would leave Bexar County with 621 election precincts with more than 100 registered voters (as of July 2020). ***To operate the legally required number of vote centers under TEC Section 43.007(f), Bexar County would therefore have to operate 50% of 621 locations. This comes to 310.5, which number must then be rounded up to 311 vote centers because you cannot provide a fraction of a vote center and because rounding down to 310 vote centers would fail to satisfy the 50 percent requirement.***

Note that 50 percent is the bare minimum required by law, but ideally, particularly during a global pandemic, counties should be attempting to minimize polling place consolidation for the sake of voters.[3] Dallas County for instance, with a similar number of registered voters and countywide polling, plans to operate over 400 vote centers on top of nearly 60 early voting sites.

The TEC does provide that when "changes in county election precinct boundaries to give effect to a redistricting plan result in county election precincts with a number of registered voters less than [750], . . . a commissioners court for a general . . . election" may combine those smaller precincts with larger neighboring precincts in order to avoid unreasonable expenditures. Tex. Elec. Code § 42.0051. Even assuming this provision applies in a county with countywide polling places seven years after redistricting, which is debatable, the TEC makes it clear that "a commissioners

---

[2] Video archive of Sep. 1, 2020 Bexar County Commissioners Court meeting, available at https://bexarcountytx.swagit.com/play/09012020-1843.

[3] *See, e.g.*, Voting Rights Lab, *Polling Place Consolidation: Negative Impacts on Turnout and Equity*, available at https://www.votingrightslab.org/polling-place-consolidation-report.



Oficina Legal del Pueblo Unido, Inc.
1410 Guadalupe Street
San Antonio, TX 78207
210.663.6727(p)
texascivilrightsproject.org

court" must actually combine the precincts for each individual election. No such combinations have been made by the Bexar County Commissioners Court for the Nov. 2020 General Election. Further, any combinations would need to combine neighboring precincts such that no more than 5,000 registered voters are combined together in one location, *id.* § 42.0051(c)),[4] and that it does not "result[] in discouraging participation by a group covered by the Voting Rights Act in any political or electoral process . . . because of the location of a polling place or other factors." *Id.* § 42.0051(d)(3). This means that any combinations cannot have a disparate impact on an ethnic, racial, or language group minority. It should be noted that the majority of polling place closures in the July runoff election were in areas predominantly composed of persons of color, including three closures in the low-income, heavily Latinx 78207 zip code alone. Concentrations of polling place closures in communities of color raise serious concerns under the Voting Rights Act, and the County needs to keep in mind the Act's requirements in its initial allocation of polling places and any subsequent changes, ensuring there is no disparate impact on voters of color.

*But again, this is moot because the Bexar County Commissioners Court has not combined any precincts for this general election.* The correct baseline for calculating the required number of locations is thus the previously discussed 621 election precincts, for which the county is required to provide at least a bare minimum of 50% coverage pursuant to the countywide polling program. The data used to perform this analysis came from the Bexar County Election Department's website posting of July 2020 runoff election results. We recognize that the underlying data may have changed since July, and the data used does not distinguish between suspense list and active registrations. Therefore, it is possible that the 311 number may be slightly revisable up or down; however, it is exceedingly unlikely that the number would be below 300 vote centers.

As noted, your office closed several vote centers with inadequate notice during the July 2020 runoff election. To ensure that the legally required number of vote centers are not just planned on paper, but are in fact operated, it will presumably be necessary to recruit far more poll workers than currently planned, and potentially acquire additional voting equipment. Therefore, it is urgent that your office officially clarify that it will operate the required number of vote centers as soon as possible. Please respond by **September 18, 2020** by email to joaquin@texascivilrightsproject.org.

Sincerely,
Joaquin Gonzalez
Staff Attorney
Texas Civil Rights Project

*cc:* County Judge Nelson Wolff; County Commissioner Sergio "Chico" Rodriguez; County Commissioner Justin Rodriguez; County Commissioner Kevin Wolff; County Commissioner Tommy Calvert; District Attorney Joe Gonzales

---

[4] The preliminary proposed list of 273 locations would have "combined" precincts in such a way that over 78 vote centers would have more than 5,000 registered voters assigned to them, with some, such as Kingsborough Middle School, having over 10,000 voters assigned, though it is unclear what it even means to combine precincts under a vote center model. On top of any legal ramifications, consolidating that many voters in one area would likely lead to long lines and social distancing complications.

3

Ex. J

# BEXAR COUNTY ELECTIONS DEPARTMENT

### Jacquelyn F. Callanen
### ELECTIONS ADMINISTRATOR

Date: September 17, 2020

Joaquin Gonzalez
Staff Attorney
Texas Civil Rights Project
1410 Guadalupe Street
San Antonio, TX 78207

Mr. Gonzalez,

I am writing in response of your September 10, 2020 letter claiming a violation of the Texas Election Code in the July 2020 election and the pending November election.

We have had permission to post the election day sites as we have by referencing the date they will be published. As our experience tells us – when we publish the election day sites before the close of early voting – the voters get confused and go to the election day sites to early vote. This became extremely concerning for our school district partners that host us, following the tragedy at Sandy Hook. All of the election day sites are available on our website (www. Bexar.org/elections) in compliance with the TEC. All voters may enter their address and get their individual sample ballot as required by law and their polling location. Our Joint Notice will be published on Sunday, October 11, 2020.

As to the Vote Centers of Bexar County. We must first correct your stated number of precincts in Bexar County. We have 734 precincts. We are compliant with Section 43.007 of the Texas Election Code. Bexar County currently has 734 total county election precincts not the 765 you cited. Of our 734 county election precincts, we have 224 that have a population of less than 750 registered voters. Per 42.0051(a) and (b), county election precincts that have a population of less than 750 registered voters can be combined to avoid unreasonable expenditures for election equipment, supplies, and personnel in a county our size. If all of those 224 precincts are combined, we are left with a total of 510 required county election precincts not election polling locations. Under 43.007, we are required to use 50 percent of the number of precinct polling places that would otherwise be located in the county for that election. This means we are required to have a minimum of 255 county election polling places for the November 3, 2020 election. We currently have 284 vote centers, and therefore we are providing more than the minimum required number of polling locations for this election.

The 5,000 registered voters assigned to a poll site does not apply to counties that have successfully achieved vote center status.

We are looking forward to a very successful November election and will build on our success of keeping both our treasured election officials and voters safe during this pandemic.

Sincerely,
Jacquelyn Callanen
Bexar County Elections Administrator

1103 S. Frio, Suite 100, San Antonio, TX 78207        Tel: (210) 335-VOTE (8683)/Fax: (210) 335-0371

Ex. K

| | | 2020 All voters | 2020 Hispanic Voters in Precincts with < 750 voters | 2020 AA Voters in Precincts with < 750 voters | 2018 All Voters | 2018 Hispanic Voters  with < 750 vote | 2018 African American Voters  with < 750 voters |
|---|---|---|---|---|---|---|---|
| count | | 1141678 | 23966 | 1746 | 1128872 | 24267 | 1759 |
| mean | | 0.9834878 | 1.195524 | 1.216831 | 0.8631101 | 1.088594 | 1.083578 |
| std | | 1.204799 | 1.144734 | 0.809593 | 0.9672712 | 1.123335 | 0.717663 |
| min | | 0.002499751 | 0.016165 | 0.089124 | 0.009594568 | 0.027571 | 0.089284 |
| | 25% | 0.3979214 | 0.476447 | 0.577918 | 0.3814458 | 0.397092 | 0.54711 |
| | 50% | 0.6624101 | 0.850127 | 1.084436 | 0.6257321 | 0.760941 | 1.071432 |
| | 75% | 1.082412 | 1.410283 | 1.739006 | 0.9957836 | 1.307049 | 1.35335 |
| max | | 27.54947 | 22.048076 | 5.43058 | 28.04008 | 22.215874 | 5.576284 |