**FILED**

October 07, 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
MFO

DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TEXAS ORGANIZING PROJECT; MOVE TEXAS CIVIC FUND; and JENNIFER K. FALCON, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. SA-20-CV-1189-FB |
| JACQUE CALLANEN, in Her Official Capacity as the Bexar County Elections Administrator; JUDGE NELSON WOLFF, in His Official Capacity as Bexar County Judge; COMMISSIONER SERGIO RODRIGUEZ, in His Official Capacity as Bexar County Commissioner; COMMISSIONER JUSTIN RODRIGUEZ, in His Official Capacity as Bexar County Commissioner; COMMISSIONER KEVIN WOLFF, in His Official Capacity as Bexar County Commissioner; COMMISSIONER TOMMY CALVERT, in His Official Capacity as Bexar County Commissioner, | § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## <u>ORDER GRANTING MOTION TO REMAND</u>

Before the Court is the Plaintiffs' Opposed Emergency Motion to Remand filed on October

7, 2020 (docket #2); Defendants' Response to Plaintiffs' Opposed Emergency Motion to Remand

filed on October 7, 2020 (docket #5); and Plaintiffs' Reply to Defendants' Response to Plaintiffs'

Opposed Emergency Motion to Remand filed October 7, 2020 (docket #6).  Plaintiffs claim this

Court lacks subject matter jurisdiction because all of their causes of action are based on state law

while defendants contend that:

> although Plaintiffs do not explicitly assert any claim under federal law, their primary claim—that they are entitled to relief because Bexar County's selection of Election Day polling locations violates the Voting Rights Act, and therefore violates Tex. Elec. Code § 42.0051(d)—presents a substantial question of federal law upon which

Plaintiffs' entitlement to relief depends, and thus establishes this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Notice of Removal, docket #1 at page 2.

### Background

As set forth in their Opposed Motion to Remand, plaintiffs filed a Petition and Application for Temporary Injunction in Bexar County District Court on October 6, 2020, related to the upcoming November 3, 2020, general election. Plaintiffs stated four causes of action they believe are all based on state law statutes as follows:

> 1. That Defendants have previously violated and intend to again violate the Texas state law which requires posting notice for Election Day polling locations twenty-one (21) days in advance (Tex. Elec. Code § 4.003). See Doc. 1-1 at 25, ¶ 85 (Plaintiffs' Original Petition in Bexar County District Court).
>
> 2. That Defendants are violating the Texas state law regarding the appointment of Volunteer Deputy Registrars (Tex. Elec. Code § 13.032), who are individuals authorized by state law to register eligible individuals to vote. Doc. 1-1 at 22–23, ¶¶ 80–82.
>
> 3. That Defendants are violating the Texas state law regarding the minimum number of polling locations that specific counties must operate because the County Commissioners Court has not taken certain necessary actions outlined in the Texas Election Code (Tex. Elec. Code § 43.007(f)). Doc. 1-1 at 23–24, ¶ 83.
>
> 4. That Defendants are violating the same state law regarding minimum polling place requirements because they are premised on combining precincts in a way that violates a different Texas state law (Tex. Elec. Code § 43.007(f); Tex. Elec. Code § 42.0051(d)(3)). Doc. 1-1 at 24, ¶ 84.

Motion to Remand, docket# at pages 1-2.  Plaintiffs assert defendants' contention that one of their state law causes of action depends upon a showing that the selection by Bexar County of their election day polling locations violates the Voting Rights Act is "a misrepresentation or misapprehension of the statutory language at issue."  *Id.* at pages 2-3.  Plaintiffs explain that the Texas Election Code at issue, §42.0051(d)(3), "in no way depends on or implicates a violation of the federal Voting Rights Act," because that statute states "that a county cannot combine election

precincts if 'it results in discouraging participation by a group covered by the Voting Rights Act in any political or electoral process or procedure because of the location of a polling place or other factors.'" *Id.* at page 3.  Plaintiffs acknowledge "the Voting Rights Act is mentioned in relation to which individuals the state law applies to," but assert "the statute's operative language is clear and establishes its own legal test completely unrelated to the Voting Rights Act." *Id.*  Plaintiffs explain the Texas statute concerns "whether certain individuals are discouraged from participating—a baseline question that does not depend on any other groups' level of participation." *Id.*  The federal Voting Rights Act, 52 U.S.C. § 10301, on the other hand, presents a question of  discriminatory impact:

> A violation of [the Act] is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a [racial group or language minority group] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Id.*  Plaintiffs argue the state law at issue here "does not depend on comparing participation by one group to that of any other group, nor does it in any way require showing a violation of the Voting Rights Act."  *Id.*  In support of their arguments plaintiffs cite to "*Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (federal question jurisdiction only exists when "the federal issue is actually disputed"); *see also* 52 U.S.C. § 10301 ("Denial or Abridgement of Right To Vote on Account of Race or Color")."  Without federal question jurisdiction, plaintiffs maintain this Court cannot assert supplemental jurisdiction over their remaining state law claims as defendants suggest.

    In response, defendants argue that plaintiffs' central claim is that "because Bexar County has designated polling places for the November 2020 general election voting in a manner that "results in a dilution of voting strength of a group covered by the federal Voting Rights Act[,]" docket no. 1-1 at ¶ 22 (quoting Tex. Elec. Code § 42.0051(d)), they are entitled to preliminary injunctive relief

ordering Bexar County to operate additional polling places on Election Day." Defendants' Response to Plaintiffs' Opposed Emergency Motion to Remand, docket #5 at page 4. Defendants' maintain this claim "squarely presents a substantial federal question: Whether the number and distribution of Bexar County's Election Day polling places 'results in a dilution of voting strength of a group covered by the federal Voting Rights Act,'" even though pleaded as a state law claim. *Id.* Defendants further maintain that plaintiffs' "entitlement to relief under Section 42.0051(d) of the Texas Election Code 'necessarily depends on resolution' of this question."

Defendants also claim that plaintiffs are attempting to "draw a distinction between the voting conditions that Section 42.0051(d) and the federal Voting Rights Act target, arguing that the Texas Election Code is focused exclusively on 'whether certain individuals are discouraged from participating[,]' while the Voting Rights Act focuses on group-based determinations of discriminatory impact. Docket no. 2 at 2." *Id.* Defendants note, however, as plaintiffs point out in their motion, "a violation of the Voting Rights Act is established if . . . the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a [racial group or language minority group] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. 52 U.S.C. § 10301." *Id.* at pages 4-5. Defendants assert that:

> [a] litigant's entitlement to relief under Section 42.0051(d) of the Texas Election Code is entirely dependent upon precisely the same question: Whether a precinct combination "results in a dilution of voting strength of a group covered by the federal Voting Rights Act" or "results in discouraging participation by a group covered by the Voting Rights Act in any political or electoral process or procedure[.]" Tex. Elec. Code § 42.0051(d)." The text of Section 42.0051(d) makes clear that the Texas Election Code shares the Voting Rights Act's group-based focus: It prohibits dilution of voting strength of "a group" covered by the VRA, or discouraging participation "by a group" covered by the VRA. As Plaintiffs point out, the Voting Rights Act prohibits political processes that provide VRA-covered groups with "less opportunity than other members of the electorate to participate[.]" Docket no. 2 at 3 (quoting 52 U.S.C. § 10301). Yet, seeking to avoid this Court's jurisdiction, Plaintiffs now seem

to argue that the election conditions they complain of will both dilute the strength of VRA-protected groups and discourage participation by those groups—but will also remain "equally open to participation" by those groups so as not to implicate the Voting Rights Act.

*Id.* at page 5. Defendants argue plaintiffs' primary claim "cannot be resolved without deciding a substantial question of federal law," and plaintiffs "err in arguing that a federal court should not be permitted to decide this federal question." *Id.* Defendants claim further that:

> [i]nstead, Plaintiffs seek to have a state judge disrupt the administration of an election—one that was mere weeks away when Plaintiffs began their litigation—by making a determination of federal law unlikely to be reviewable by a federal court until after the election. The United States Supreme Court recently affirmed that "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). Plaintiffs seek to have a lower state court do so.

*Id.*

In reply, plaintiffs argue that the defendants are misquoting the statute at issue and mischaracterizing their complaint. Specifically, plaintiffs note that defendants have "mistakenly state[d] that Texas Election Code Section 42.0051(d)(3) 'prohibits the combination of precincts that "results in a dilution of voting strength of a group covered by the federal Voting Rights Act."' Doc. 5 at 3, ¶ 3." Plaintiffs' Reply to Defendants' Response to Plaintiffs' Opposed Emergency Motion to Remand, docket #6 at page 1. Plaintiffs believe this was done "because this language uses the phrase 'dilution of voting strength,' which is more similar to language that is at times used in federal Voting Rights Act ("VRA") caselaw." *Id.* at 1-2. Setting aside that this still does not raise a substantial federal question, plaintiffs assert the defendants are quoting § 42.0051(d)(1) of the Texas Election Code and not § 42.0051(d)(3) upon which plaintiffs' cause of action is based. Section 42.0051(d)(3) "prohibits combinations if it 'results in discouraging participation by a group covered by the Voting Rights Act in any political or electoral process or procedure because of the location of a polling place or other factors.' See Doc. 1-1 at 24, ¶ 84 (Plaintiffs' Original Petition in Bexar County District

Court)." *Id.* at page 2. Second, and more importantly, plaintiffs contend that:

> Defendants continue to conflate the threshold questions in the state law cause of action with the question in the VRA. Plaintiffs never claim – nor does their state law cause of action contemplate – a comparison of one group's ability to participate with the ability of "other members of the electorate," unlike the VRA, which explicitly does so. See 52 U.S.C. § 10301. Indeed, Defendants' polling place closures discourage participation by all Bexar County voters regardless of race or color. A federal question exists only where "resolving a federal issue is necessary to resolution of the state-law claim." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). Defendants fail to establish how it is necessary to show a violation of the VRA's discriminatory impact test in order to establish a violation of a completely distinct state law which enunciates its own concrete and different legal standard that does not require establishing a violation of the VRA.

*Id.*

## Standard of Review

The federal courts are courts of limited jurisdiction as defined by the Constitution and by statute. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. 1981). "Where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal tribunal poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect." *Id.* The Fifth Circuit has consistently held that "[b]ecause the establishment of a basis for the exercise of subject matter jurisdiction is the sine qua non of federal litigation...it is the party who urges jurisdiction upon the court who must always bear the burden of demonstrating that the case is one which is properly before the federal tribunal." *Id.* at 549. The removal statute is to be strictly construed, and any doubts concerning removal must be resolved against removal and in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *Blackmore v. Rock-Tenn Co. Mill Div., Inc.*, 756 F. Supp. 288, 289 (N.D. Tex. 1991). The federal trial court must be certain of its jurisdiction before it embarks "upon a safari in search of a judgment on the merits." *B., Inc.*, 663 F.2d at 549.

Removal in this case is based upon 28 U.S.C. § 1441 as a "civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Because no diversity jurisdiction has been alleged, the issue before the Court is whether this action arises under the Constitution, laws or treaties of the United States pursuant to 28 U.S.C. § 1331.  *See Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).

Whether the claim "arises under" federal law for removal purposes is determined by the well-pleaded complaint rule which also determines original federal question jurisdiction.  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  Federal courts have jurisdiction to hear, "originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).  Courts require the complaint to contain a federal claim, *i.e.* either an express or implied right of action under federal law.  The fact a state law cause of action may require reference to federal law is not enough.

Although there is no "automatic test" to determine whether federal question jurisdiction exists, the requisite inquiry has been summed up as follows:

> "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314, 125 S. Ct. 2363. In other words, federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."

*Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)); *see Gunn v. Minton,* 568 U.S. 251, 258 (2013) (relying on *Grable* and explaining federal jurisdiction over "a state law claim will lie if a

federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.").

## Analysis

In determining whether the Court has jurisdiction, the Court must review the plaintiffs' well-pleaded complaint.  With respect to the claim upon which the defendants based their removal, the plaintiffs alleged, in relevant part, as follows:

*ii. The Legal Baseline for Establishing the Minimum Allowable Number of Vote Centers*

18. The starting point for determining how many polling places "would otherwise be located in the county" is section 43.001 of the TEC, which mandates that "[e]ach election precinct established for an election shall be served by a single polling place located within the boundary of the precinct."

19. For general elections, there is only one exception to the requirement that each precinct have its own polling place. Section 42.0051 allows that if "changes in county election precinct boundaries to give effect to a redistricting plan result in county election precincts with a number of registered voters less than [750], . . . a commissioners court for a general . . . election" may combine those smaller precincts with larger neighboring precincts in order to avoid unreasonable expenditures.

20. Thus, the commissioners court is the only entity with the authority to combine precincts, and precincts must be separately combined for each general election.

21. Precincts cannot be combined in such a way that more than 5,000 active registered voters are combined together. TEX ELEC. CODE § 42.0051(c).

22. Additionally, Section 42.0051(d) prohibits combining a location if it:

i. results in a dilution of voting strength of a group covered by the federal Voting Rights Act (42 U.S.C. Section 1973c et seq.);

ii. results in a dilution of representation of a group covered by the Voting Rights Act in any political or electoral process or procedure; or

iii. results in discouraging participation by a group covered by the Voting Rights Act in any political or electoral process or procedure because of the location of a polling place or other factors.

23. The Voting Rights Act ("VRA") protects historically disenfranchised racial groups as well as certain language minority groups, including, in San Antonio, Spanish-language speakers. *See* 52 U.S.C. § 10301, 10303(f).

24. To determine the minimum number of polling locations a county can operate in the countywide polling place program, one must figure out (a) how many election precincts are in the county; (b) how many of those precincts have fewer than 750 registered voters; (c) whether the county commissioners court has combined any precincts for the general election; and (d) whether removing the polling place for any of those smaller precincts would result in discouraging a VRA protected group from participating in an electoral process or in combining more than 5,000 active registered voters together.

## IV. Causes of Action

**B. Defendants' Actions Violate Section 43.007(f)(1) of the Texas Election Code Because They Are Premised on Combining Every Precinct with Under 750 Registered Voters Despite the Commissioners Court Having Not Legally Combined Those Precincts**

83. The plain language of the TEC makes clear that only the Commissioners Court can combine precincts, and that it must actually combine those precincts for each individual election. TEX. ELEC. CODE § 42.0051. The Bexar County Commissioners Court has not ordered the combination of precincts for the 2020 General Election. Insofar as it approved a list of Election Day locations proposed by Defendant Callanen, this did not constitute a lawful combination of precincts because, inter alia, it combined more than 5,000 registered voters together in contravention of TEC 42.0051(c). Defendant Callanen has made it clear that she does not believe that it is necessary for the Commissioners Court to formally combine precincts, and that any theoretical combinations do not need to adhere to the other legal requirements for combining precincts – for example, that the precincts cannot be combined if the total population being combined totals more than 5,000 active registered voters. See Ex. J (Sep. 18 Response from Def. Callanen to Texas Civil Rights Project).

**C. Defendants' Actions Violate Section 43.007(f)(1) of the Texas Election Code Because They Are Premised on a Theoretical Ability To Combine Precincts in a Way That Discourages Participation by VRA-protected Groups**

84. Defendant Callanen's proposed 284 election-day locations is premised on being able to combine every precinct that contains fewer than 750 registered voters. However, combining all of these precincts demonstrably has discouraged and will continue to discourage VRA-protected groups from participating in the election on Election Day. This contravenes the plain language of TEC Section 42.0051, which

states that an election precinct cannot be combined if it "results in discouraging participation by a group covered by the Voting Rights Act in any political or electoral process or procedure because of the location of a polling place or other factors."

Plaintiffs' Original Verified Petition and Application for Temporary Injunction, docket #1-1 at pages 8-9 and 23-24.   The Court has reviewed the plaintiffs' petition and allegations pursuant to § 42.0051(d)(3) of the Texas Election Code and its reference to the Voting Rights Act and finds the defendants have not met their burden of proving federal subject matter jurisdiction exists in this case as pleaded.  *Gunn v. Minton,* 568 U.S. 251, 258 (2013); *see Taylor v. Currie*. 386 F. Supp. 2d, 929, 934 (E.D. Mich. 2005) (explaining that a mere reference to federal law or federal right not sufficient to confer subject matter jurisdiction; complaint sought to "assert rights arising under state statutes against state official in relation to a state election.  It is hard to imagine a more quintessentially state case.").   Moreover, even if this Court has jurisdiction, it would abstain pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).  *Texas Democratic Party v. Abbott*, 961 F.3d 389, 398 n.13 (5th ir. 2020) (noting courts have abstained in voting-rights cases, "including election-law case involving important and potentially dispositive [sic] state-law issues").

Accordingly, based on the foregoing and the arguments and authorities presented by plaintiffs in their motion and reply, IT IS HEREBY ORDERED that Plaintiffs' Opposed Emergency Motion to Remand (docket #2) is GRANTED and this case is REMANDED to the 45th Judicial District Court of Bexar County, Texas, for lack of subject matter jurisdiction.  IT IS FURTHER ORDERED that the Clerk of the Court send a certified copy of this order to the clerk of the state court.

It is so ORDERED.

SIGNED this 7th day of October, 2020.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE